[Civ. No. 16939.    First Dist., Div. One.    Apr. 2, 1956.]

MAXINE B. DOW, as Administratrix With the Will Annexed, etc., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; MAXINE PATRICIA HUTCHINSON, Real Party in Interest.

Erskine, Erskine & Tulley, Morse Erskine II, J. Oscar Gold-stein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux and Goldstein for Petitioner.

No appearance for Respondent.

William A. White and Hutchinson & Quattrin for Real Party in Interest.

WOOD (Fred B.), J.—In this proceeding brought by Maxine B. Dow, individually and as administratrix, to restrain the superior court from taking certain steps and proceedings in the administration of the estate, it seems desirable to narrate certain events in chronological order before stating and discussing the issues.

September 18, 1953, the other division of this court rendered its decision directing the superior court to enter its order (1) terminating the widow's family allowance retroactively as of the date upon which a motion therefor had been made, (2) directing the administratrix to sell sufficient of the assets of the estate to pay all claims and costs of administration within a period of six months from the date of the remittitur, and (3) that, in default thereof, the administratrix be removed from office and another administrator be appointed to close the estate. (*Estate of Dow,* 120 Cal.App.2d 296, 300 [260 P.2d 970].)

Three months after the filing of the remittitur, the administratrix filed her fourth and final account and petition for distribution. Maxine Patricia Hutchinson, daughter of the testator, filed objections to the account and alleged that her mother, Maxine B. Dow (widow and administratrix) was entitled to no share in the estate.

A decree was filed February 2, 1955, which among other things settled the accounts and ordered distribution of the assets. On the same day, the daughter filed notice of appeal from the whole of the decree.

March 8, 1955, the daughter filed a notice entitled "amendment and supplementation of notice of appeal and limitation, withdrawal and abandonment of designations of appeal heretofore taken. . . . " Our examination of this document convinces us that it may and properly should be viewed as an

abandonment of the appeal as to certain designated portions of the decree, thus limiting the appeal to the remaining portions of the decree. This the appellant had a right to do. ▮ Rule 19 of the Rules on Appeal from the superior court declares that at "any time before the filing of the record in the reviewing court, the appellant may file in the office of the clerk of the superior court a written abandonment of the appeal. . . . " * The record had not yet been filed in the reviewing court.

We interpret the quoted portion of the rule as authorizing abandonment in whole or in part, if in the latter case the resultant delimited appeal is from severable portions of the judgment. Such an intendment is in harmony with the spirit and purpose of the rules and in furtherance of justice and the efficient administration of justice. It seems right and proper to encourage an appellant, when he finds that his original notice is broader in scope than need be, to relinquish suitable portions thereof and thus at an early stage of the proceeding narrow the issues which the respondent must prepare to meet and the reviewing court to consider. In many such cases it should be possible thereby greatly to reduce the bulk and cost of the record upon appeal. Then, too, there is the precedent, by analogy, of partial abandonment (expressly or by conduct) after the record reaches the viewing court. We refer to such cases as *Estate of Hinde,* 200 Cal. 710, 715-716 [254 P. 561], in which an appeal from one of the orders involved was deemed abandoned by the appellants in view of a statement in their brief that they were "not here urging reversible error" in respect to that order; *Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal.2d 1, 17 [47 P.2d 462], in which appellant's failure in his briefs to discuss the issues as to three of the four respondents was deemed an abandonment as to those three; and *Heaton* v. *Justice's Court,* 19 Cal.App.2d 118, 123 [64 P.2d 1004], in which the notice of appeal specified the judgment and certain orders made after judgment, and the court held that the appellant abandoned his appeal from the orders by discussing in his brief solely the issues involved in his appeal from the judgment.

We are prompted to add that the very existence of this principle and this practice of recognizing partial as well as total abandonment of an appeal after it reaches the reviewing court

---

*This provision closely follows a like provision of section 954a which was added to the Code of Civil Procedure in 1935 and repealed in 1945.

No judicial decision discussing the question whether "abandonment," as used in the code section or in the rule, includes abandonment in part, has come to our attention.

(long antedating § 954a of the code and rule 19 of the rules) is further persuasive of the view that the word "abandonment" was used in Rule 19 as including abandonment of any severable part of an appeal.

The instrument by which the partial abandonment was effected in this case is somewhat complex in its wording but no more so, apparently, than was required to designate with reasonable precision those portions of the judgment in respect to which the appeal was being abandoned. We find that the instrument makes the intended designations with reasonable certainty; particularly in view of that provision of rule 1 of the Rules on Appeal which declares that a "notice of appeal shall be liberally construed in favor of its sufficiency," a principle developed and applied prior to the adoption of rule No. 1 (*Estate of Smead*, 215 Cal. 439 [10 P.2d 462]). This principle was similarly applied quite recently by this court in *Verdier* v. *Verdier*, 118 Cal.App.2d 279, 283 [257 P.2d 723].

It is observable, too, that the filing of the modifying document within the time limited for the filing of an original notice of appeal might serve as a basis for viewing the modifications as permissible amendments of the scope of the appeal as originally noticed.

In ascertaining whether the appeal as thus delimited is from severable portions of the decree, we are guided by the test furnished by our Supreme Court in *American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 217 [246 P.2d 935]: "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have been attacked. . . . '[I]n order to be severable, and therefore appealable, any determination of the issues so settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed. . . . Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as the result of an appeal cannot affect the determination of the remaining issues of the suit. . . .' (*Attorney General* v. *Pomeroy*, 93 Utah 426 [73 P.2d 1277, 1294, 114 A.L.R. 726].)"

Applying this test in *Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656], the Supreme Court concluded that, under the cir-

cumstances of the case, a portion of the judgment which provided for the division of the furniture of the parties was severable from the portion which disposed of the real property, the court saying in part, "it does not appear that any question concerning the furniture was 'the same as, or interdependent upon' the order fixing the interests of the parties in the home." (P. 215.)

Similarly in the instant case, we find that the delimited appeal is from portions of the decree that do not involve any question that is "the same as, or interdependent upon" any question involved in other portions of the decree and, therefore, are severable.

The portions as to which the appeal was abandoned are these: (1) Orders fixing and directing payment of compensation of various persons for services severally rendered to the estate (leaving, subject to the appeal, orders fixing and directing payment of compensation of the administratrix and certain of her attorneys); (2) Orders directing Maxine Dow personally, not as administratrix, to pay Maxine Hutchinson's costs of appeal in 120 Cal.App.2d 296 [260 P.2d 970], and to refund $262.55 to the estate as directed in 120 Cal.App.2d 296 [260 P.2d 970] (leaving, subject to the appeal, orders fixing the amount due upon and authorizing payment of a judgment Maxine Dow had recovered against the estate, and fixing the amount and directing payment of a claim of Maxine Dow as reimbursement for moneys expended on behalf of the estate); (3) Orders declaring that Gerald H. Dow and Edgar L. Dow, Jr., are not entitled to inherit; (4) Order awarding and distributing to Maxine Hutchinson one-half of the residue of the estate after payment of all obligations, costs, and attorney's fees (leaving, subject to the appeal, an award and distribution to Maxine Dow of a like one-half interest in the residue, and an order determining the amount of principal of and the rate of accruing interest upon a bequest to Maxine Dow and authorizing its payment); (5) Order directing the administratrix to withhold $100 for closing expenses, and moneys for taxes that might accrue, one-half of the unexpended balance thereof to go to Maxine Hutchinson (leaving, subject to the appeal, a direction that the other half of the unexpended balance go to Maxine Dow). This left, also subject to the appeal, the remaining features of the orders settling the third and fourth accounts, and an order directing the administratrix to file a supplemental account.

██ We entertain no doubt on the question of severability.

For example, the amount of fees earned by and awarded to one attorney has no bearing upon those earned by and awarded to another attorney in this particular case; the be-. quest to Maxine Dow stands or falls by itself; her judgment against the estate is a debt that is quite separate and distinct from all other claims; and her commissions and the amount thereof stand upon their own footing. This is subject, of course, to the financial condition of the estate. The decree valued the estate at $225,106.07, several times the aggregate amount of all obligations, costs and fees, including the bequest, and directed distribution only of the residue remaining after the payment of all obligations, costs and fees.

It is apparent that the respondent court has *jurisdiction* to take such steps and proceedings as may be appropriate to the enforcement and carrying out of the unappealed portions of the decree.

This brings us to the order of September 7, 1955, which petitioner herein claims was made without jurisdiction or in excess of jurisdiction. Upon petition of Maxine Hutchinson and after a hearing the respondent court made certain findings and ordered Maxine Dow, forthwith and in all events on or before September 17, 1955: (1) as administratrix, (a) to pay to the persons named in the order the amounts set opposite their names [compensation for professional services rendered to the estate; each in the amount of the award, except that as to one person the amount was increased by $350 by way of compromise and dismissal of his appeal and as to another a reduction in the amount of $750 in response to his wish for prompt payment], aggregating $10,300; (b) to convey to Maxine Hutchinson, as devisee, her undivided one-half interest in the estate's undivided interest in certain real property known as the Mayflower Mine; (c) to deliver to Maxine Hutchinson 2,200 shares of the stock of River Farms Company, from the 4,758.5 shares held by the estate [partial distribution of the distributee's one-half interest in all the shares awarded by the decree]; and (2) personally, not as administratrix, (a) to pay Maxine Hutchinson's costs on appeal in 120 Cal.App.2d 296 [260 P.2d 970], and (b) to refund to the estate the money which she had paid out of estate funds in the appeal in 120 Cal.App.2d 296 [260 P.2d 970]. Each of these directions to pay, convey or deliver pertained to an order or award which was no longer subject to appeal and had become final.

The court also, in this order of September 7th, deferred, at the request of the administratrix, the settlement of her supplemental account, and reserved jurisdiction and rulings in respect to all other issues and questions presented by the pleadings and the evidence, without prejudice for future determination.

As facts, the court in this order found all of the allegations of Maxine Hutchinson's petition true* except as to the amount of the estate's cash on hand and in bank, which, as of the date of the order, the court found was $20,805.03.

By this reference to the allegations of the petition, the court found the following significant facts among others: The shares of stock of River Farms Company bear dividends of $3.00 per share per year and are readily salable at not less than $45 per share; the sale of 350 shares will produce a net sales price of $15,750 (the court in effect held in reserve for such a contingency 358.5 shares by distributing only 2,200 to the daughter); all taxes accruing since the decree have been paid; there are no other accrued or accruing claims or demands against the estate by way of tax liability or otherwise; and the estate is in a condition to distribute to Maxine Hutchinson said 2,200 shares of stock and one-half of the remaining assets, other than cash, all actual and possible contingencies notwithstanding.

We must accept these findings at face value. We observe nothing in the record that challenges their soundness. This is not an appeal and the record herein does not include the evidence upon which the findings were based.† It follows

---

*In view of the reservation of jurisdiction and rulings in respect to ''other issues,'' this finding should perhaps be interpreted as limited to all allegations that were relevant to the things which the court in its order of September directed to be done. The reservation of ''rulings'' on other issues well may have been intended by the court to include rulings in the form of findings of fact as well as conclusions of law and orders based thereon that might later be made.

It is of interest to note that in her reply to the return made by the real parties in interest, the petitioner states that on October 19, 1955, the estate had cash in hand in the sum of $23,463.52, a marked increase over the $20,805.03 it had on September 7, 1955.

†There is appended to petitioner Dow's Reply to Real Party in Interest Hutchinson's Return (as Exhibit B) a purported transcript of the hearing which culminated in the order of September 7, 1955.

Even if that be a complete and accurate transcript it does not furnish us the evidence except in fragmentary fashion. Each party called upon the probate judge to take judicial notice of various and sundry proceedings theretofore had in the *Estate of Dow*, including evidence adduced, documents filed and orders made therein. We have, in the instant proceeding, no such knowledge or record of those matters (judicially

that the court had jurisdiction to make the order it did make on September 7, 1955.

Next in sequence is an order of September 20, 1955, to show cause why the petitioner herein should not be adjudged in contempt of court for failing to carry out the order of September 7. Petitioner, who has appealed from the latter, claims the appeal is effective, operates as a stay, and therefore for the time being deprives the respondent court of jurisdiction to enforce the order appealed from; wherefore, she asks this court by writ of prohibition to restrain the respondent court from taking any further steps in the contempt proceeding, during the pending of her appeal. ■ We are persuaded that those provisions of the order of September 7, 1955, which direct the payment of money or distribute property or rights in property are appealable under those clauses of section 1240 of the Probate Code which respectively authorize an appeal from an order "directing an executor or administrator," "directing or allowing the payment of a debt, claim, legacy or attorney's fee," or "distributing property." The real party in interest claims the order of September 7th was not appealable upon the theory that it merely implemented the decree and, therefore, had no such independent force of its own as to qualify as an "order" within the meaning of that term as used in section 1240.

■ Without passing upon the conclusion which she would have us draw from that premise, we observe that the September 7 order was not merely clarifying or repetitive. A serious question concerning the appealability of any portion of the decree of February 2, 1955, had been presented by the manner in which the real party in interest had taken her appeal therefrom. Her appeal from the whole of the decree, followed by partial abandonment of certain portions of the appeal presented to the administratrix, the legatees and other distributees and the trial court a legal question of first impression in this state. In its essence, therefore, the order of September 7 was an order "instructing" and "directing" the administratrix concerning her present right and duty to make the payments and distribute the property as declared and prescribed in the order of September 7. It should not matter greatly that

noticed by the trial judge) as would enable us to undertake to determine whether they furnish substantial support for the findings of fact upon which the order of September 7, 1955, is based.

the petition which initiated the proceeding that culminated in this order was signed by a legatee and devisee rather than by the administratrix as provided in section 588 of the Probate Code.

It is true that our Supreme Court recently said that ''it is clear that the change in section 1240 [making appealable an order 'instructing or directing an executor or an administrator'] was enacted to accommodate orders made pursuant to section 588.'' (*Estate of Schechtman,* 45 Cal.2d 50, 55 [286 P.2d 345].) That statement, we think, should be read in the light of the type of nonappealable order which the court was then considering, an order made pursuant to the discovery provisions of sections 613-615 of the Probate Code. We do not think the court by the statement quoted intended to hold unappealable an instructional or directional order of the type under consideration in the instant case.

We say this because of the rulings made in the following cases: An order directing an administrator to withhold the distributive shares of nonresident heirs (issued after the rendition of the decree of distribution) was deemed appealable as an order ''instructing or directing an executor or an administrator,'' in *Howaldt* v. *Superior Court,* 18 Cal.2d 114, 116 [114 P.2d 333]. (The reported decision does not show that the order resulted from a section 588 proceeding.) The Howaldt case was followed in *Estate of Mitchell,* 20 Cal.2d 48, 50 [123 P.2d 503], which held appealable (as ''an order instructing or directing an executor or administrator'') a direction that the executors pay a certain sum to a realtor by way of commission, a direction contained in an order confirming the sale of the property involved. Similarly, in *Estate of Hart,* 119 Cal.App.2d 310, 312-313 [259 P.2d 703] (hearing by Supreme Court denied, 319), an order was deemed appealable (as ''an order refusing to direct an executor'') which was made in a contest of will proceeding and in the form of a denial of contestant's motion for an order that his costs be paid out of the estate (hence, not a § 588 proceeding). In *Estate of Lucas,* 23 Cal.2d 454 [144 P.2d 340], it was said that an order to approve a compromise made pursuant to section 718.5, Probate Code, was ''appealable either as an order 'instructing or directing an executor or administrator' or as one ·'directing or allowing the payment of a debt' or claim'' (p. 463); cited and followed in *Estate of Stevens,* 27 Cal.2d 108, 113 [162 P.2d 918], also in *Strudthoff* v. *Yates,* 28 Cal.2d 602, 609, 614 [170 P.2d 873], and in *Estate of*

*Green,* 138 Cal.App.2d 211, 214 [292 P.2d 651], each in relation to a proceeding instituted by a petition filed under section 718.5.

In addition, the order of September 7 differed in the following respects from the decree of distribution: (1) the amount of one attorney's fee was increased by way of compromise for the dismissal of his appeal and the amount of another attorney's fee was reduced in response to his desire for prompter payment; and (2) distribution to the real party in interest was ordered in a quantity less than as awarded by the decree and without waiting for payment of all obligations, costs and fees and the filing and approval of the supplemental account required by the decree. These portions of the order certainly qualified as appealable orders "directing or allowing the payment of a debt, claim, legacy or attorney's fee" and an order "distributing property," respectively (§ 1240).

Furthermore, even as to the fees and commissions which the order of September 7 directed the administratrix to pay in the precise amounts awarded by the decree of distribution, *In re Smith,* 117 Cal. 505 [49 P. 456], indicates that the direction therefor is appealable as a direction for the "payment of a debt, claim, legacy or attorney's fee." In that case an adjudication was made December 24, 1895, that the claim of one Thorne was a preferred claim and that it be paid in due course of administration. From that order no appeal was taken. Later, on April 24, 1896, an order was made directing the administrator to pay the Thorne claim. An appeal was taken from the April order which recited that the administrator had money on hand sufficient to pay the claim, that the estate was insolvent, and directed that the claim be paid by the administrator "forthwith." The administrator appealed from the April order and Thorne moved to dismiss it as an appeal from a nonappealable order. In denying the motion to dismiss, the court said "The order being for the payment of a debt or claim is expressly made appealable by subdivision 3 of section 963 of the Code of Civil Procedure. Whether or not the order of December 24, 1895, could or should have been appealed from is a question not before us." (P. 507.)

Under the circumstances, the rationale of *Guardianship of Morro,* 36 Cal.App.2d 623 [98 P.2d 552], does not apply. It held that a subsequent order which in effect "merely clarified the previous order by supplying the name to be placed in the deed as grantee and directing its proper delivery" (p.

628) was not appealable. Ours is a directing order, not a mere clarification of a directing order.

The real party in interest further claims that the order of September 7, 1955, is nonappealable for the additional reason that it is, assertedly, the initial step in a contempt proceeding and as such should be treated as a mere intermediate order; added, is the fact that under section 1222, Code of Civil Procedure, a contempt order is "final and conclusive," hence nonappealable. One of the cases upon which the real party in interest principally relies is *Gue* v. *Dennis,* 28 Cal.2d 616 [170 P.2d 887]. The appellant had been served with subpoenas pursuant to the provisions of sections 92 and 93 of the Labor Code, but refused to respond thereto. The Labor Commissioner brought the refusal to the attention of the superior court and requested an order directing the appellant "to appear and show cause why he should not be punished for contempt in failing to comply with" the subpoenas (p. 617). Based upon the Labor Commissioner's affidavit, "the superior court made an order directing appellant to show cause why he should not be required to comply with the subpoena. Following a hearing, appellant was ordered to obey the subpoenas duces tecum within a prescribed period of time 'or be adjudged in contempt' " (p. 617), from which order he appealed. The Labor Commissioner moved to dismiss the appeal as having been taken from a nonappealable order. In granting the motion the court said: "Section 93 of the Labor Code has as its objective an adjudication in contempt if noncompliance persists. This being so, an order directing compliance, which expressly contemplates a further order, is intermediate in character, and any review thereof should await a subsequent adjudication in contempt. . . . In the event appellant is adjudged in contempt, review may be had either by certiorari or habeas corpus, whichever is appropriate." (Pp. 617-618.) No such situation obtained in the instant case. The petition which initiated the proceeding which culminated in the order of September 7, 1955, neither expressly nor by necessary implication indicates that a contempt proceeding is in progress. Insofar as the subject matter of the order of September 7 is concerned it was a petition which in considerable detail summarized the significant features of the decree of final distribution, alleged that the petitioner had appealed from certain portions of the decree, averred that those portions were separable and had become final, stated facts tending to show that distribution could be made to the

petitioner and that certain fees and commissions could be paid to the attorneys and others without prejudice to ultimate payment and satisfaction of all other obligations of the estate in case the petitioner should lose all phases of her appeal, and prayed that the court direct the administratrix to forthwith make the payments and convey the property interests which the trial court in its order of September 7 did direct. The order dated September 7 was filed September 8 and on September 13, 1955, the administratrix filed a notice of appeal from the order. It was not until September 20 that the proceeding under discussion took on the aspect of a contempt proceeding. It was on September 20 that the real party in interest filed a "supplementation of" the petition which she had originally filed. In response to this supplemental petition and on September 20 an order to show cause why the administratrix should not be adjudged in contempt of court for failing to carry out the order of September 7 was made.

We conclude, therefore, that the order of September 7 was appealable.

This appeal stays the portions of the order of September 7 to which it applies. (See Code Civ. Proc., § 946; *Estate of Waters,* 181 Cal. 584, 585 [185 P. 951] ; *Lerner* v. *Superior Court,* 38 Cal.2d 676, 680 [242 P.2d 321].)

The probate court is without jurisdiction to proceed with the enforcement of those provisions of the order of September 7 which are thus stayed. (See *Sacks* v. *Superior Court,* 31 Cal.2d 537, 540 [190 P.2d 602], and cases cited.)

The writ will not restrain the respondent court from considering and acting upon other matters mentioned or referred to in the order of September 7, such as "other issues and questions presented by the pleadings . . . and the evidence received thereon," jurisdiction and rulings concerning which the court reserved "without prejudice, for further determination," such, for example, as an application for removal of the administratrix and the appointment of a new administrator. (See *Estate of Buchman,* 132 Cal. App.2d 81, 106 [281 P.2d 608], and cases collected in 3 Cal. Jur. 677-679, § 190.)

Accordingly, a peremptory writ of prohibition should issue restraining the respondent court from taking steps and proceedings (embraced within the order of September 20) for the enforcement of those provisions only of the order of September 7 which have been stayed by the appeal.

The real party in interest has, in this proceeding, requested various writs and orders for affirmative relief in matters extraneous to the issues involved herein. Those requests are denied without prejudice to their renewal in appropriate form, independently of this proceeding, should the requester be so advised.

The alternative writ is discharged. Let a peremptory writ of prohibition issue to restrain the enforcement of certain of the provisions of the order of September 7, 1955, as herein described and limited.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 2, 1956, and the petition of the real party in interest for a hearing by the Supreme Court was denied May 29, 1956.