[S.F. No. 24916. Aug. 3, 1987.]

AGRICULTURAL LABOR RELATIONS BOARD, Plaintiff and Respondent, v.
TEX-CAL LAND MANAGEMENT, INC., Defendant and Appellant.

AGRICULTURAL LABOR RELATIONS BOARD, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
TEX-CAL LAND MANAGEMENT, INC., Real Party in Interest.

COUNSEL

Dressler, Quesenbery & Silver, Dressler, Quesenbery, Laws & Barsamian and Richard J. Papst for Defendant and Appellant and Real Party in Interest.

Daniel G. Stone, Michael E. Hersher and Nancy C. Smith for Plaintiff and Respondent and Petitioner.

No appearance for Respondent.

Dianna Lyons, Ellen J. Eggers, Daniel A. Garcia and Ira L. Gottlieb as Amici Curiae.

OPINION

**PANELLI, J.**—We granted review in this case to resolve a conflict in the Courts of Appeal about whether superior court judgments enforcing decisions of the Agricultural Labor Relations Board (ALRB or Board) are appealable. We uphold the conclusion of the Court of Appeal, Fifth Appellate District, in this case that superior court enforcement orders may be appealed, but that the issues on such an appeal are limited. We further hold that the appellate-stay provisions of Part 2 of the Code of Civil Procedure (Of Civil Actions, § 307 et seq.) apply to such orders. We therefore affirm the Court of Appeal's judgments. We disapprove *Agricultural Labor Relations Bd.* v. *Abatti Produce, Inc.* (1985) 168 Cal.App.3d 504 [214 Cal.Rptr. 283], to the extent that decision is inconsistent with our conclusions.

## PROCEDURAL HISTORY

On November 24, 1982, the ALRB found that appellant Tex-Cal Land Management, Inc. (Tex-Cal) had violated the Agricultural Labor Relations Act (ALRA) by (1) contracting out harvesting work without giving its employees' authorized representative notice and opportunity to bargain and (2) discharging the members of a work crew in retaliation for their protests of working conditions. (See Lab. Code, § 1153, subds. (a), (e).)[1] Among other things, the Board ordered Tex-Cal to (1) cease and desist from further unilateral changes in working conditions, (2) cease and desist from further discriminatory discharges, (3) reinstate the discharged work crew, and (4) make whole all affected employees for their economic losses resulting from the unfair practices.

Tex-Cal sought review of the Board's decision in the Court of Appeal (§ 1160.8), but the petition for review was dismissed at Tex-Cal's request on March 30, 1983. The Board's decision and order thereupon became final on the merits.

On May 24, 1984, the Board petitioned the superior court for enforcement of its order, alleging Tex-Cal's "refus[al] to comply." (*Ibid.*) On June 5, 1984, the superior court issued a judgment of enforcement. The judgment restated in haec verba the remedial provisions imposed by the Board.

On July 31, 1984, Tex-Cal noticed an appeal from the superior court judgment. On October 20, 1984, the Board moved to dismiss the appeal, contending that superior court enforcement judgments authorized by the ALRA are not appealable.

Meanwhile, on August 27, 1984, the Board petitioned the superior court for an order to show cause re contempt, claiming that Tex-Cal continued to violate the Board's order as incorporated in the June 5 judgment. The superior court issued an order to show cause; a hearing on contempt occurred on October 2, 1984. The court declined to hold Tex-Cal in contempt, ruling that the judgment enforcing the Board's order was automatically stayed by the pending appeal. The Board sought a writ of mandate from the Court of Appeal.

The Court of Appeal consolidated the appeal and the mandate proceeding. In a single opinion, the appellate court (1) denied the motion to dismiss, (2) affirmed the superior court enforcement order of June 5, 1984,[2] and

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] On appeal, Tex-Cal argued there was no substantial evidence that judicial enforcement was warranted by its "refus[al]" to comply with the ALRB order. Tex-Cal suggested that

(3) granted in part the petition for mandate, finding that certain portions of the judicial enforcement order had not been stayed pending appeal.

The Board sought review. It urged that the appeal should have been dismissed because the order appealed from was nonappealable. It further contended that, even if appeal was possible, normal appellate-stay rules were inapplicable, and no portion of the judicial enforcement order had been stayed during the appeal. Hence, the Board argued, its petition for mandamus relief should have been granted in full.

### DISCUSSION

Under section 1160.8, a "person aggrieved" by a final ALRB order may petition the Court of Appeal for review. The petition for review must be filed within 30 days after issuance of the Board's order, and it calls into question the merits of the agency's decision. If no timely petition for review is filed, or if review is denied (see *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 352 [156 Cal.Rptr. 1, 595 P.2d 579]), the Board may petition the superior court for enforcement of its order. The superior court may not review the merits of the administrative decision, and it "shall" enforce the order "by writ of injunction or other proper process" if, after hearing, it determines "[(1)] that the order was issued pursuant to procedures established by the [B]oard and [(2)] that the person [to whom the order is directed] refuses to comply . . . ."[3]

The Court of Appeal accepted Tex-Cal's contention that superior court enforcement is a final judgment made appealable by Code of Civil Proce-

---

"refus[al]," as used in section 1160.8, requires a wilful and deliberate purpose to disobey. The Court of Appeal noted several instances in which the Board's order had been violated. It held that a *failure* to comply after notice of the order is ample circumstantial evidence of refusal.

[3] Review and enforcement procedures under section 1160.8 differ from those adopted in the National Labor Relations Act (NLRA). Section 10(e) of the NLRA (29 U.S.C.A. § 160(e)) permits the National Labor Relations Board (NLRB) to petition for judicial enforcement of its final order. Section 10(f) (29 U.S.C.A. § 160(f)) authorizes the party aggrieved to petition for judicial "review" of the order. There is no statutory time limit on either form of petition. Both trigger review of the merits of the NLRB order, but they are not treated for procedural purposes either as ordinary appeals or as applications for discretionary writs. (See *Tex-Cal, supra,* 24 Cal.3d at p. 348.) In each case, the petition is directed to a federal court of appeals, but if all are in vacation, it is directed to a United States District Court. The court may enter a "decree" enforcing, modifying, or setting aside the NLRB order. The "judgment and decree" are "final," except that a district court judgment is subject to "review" by the appropriate court of appeals, and a court of appeals judgment is subject to "review on certiorari" by the United States Supreme Court. (NLRA, § 10(e), (f), *supra.*) The ALRA makes no similar express provision for finality or review of superior court enforcement orders. In view of the substantial differences in the state and federal schemes, we must follow general principles of California procedure, not the federal procedural model. (See § 1148 [only "applicable" federal precedent applies]; *Tex-Cal, supra,* 24 Cal.3d at p. 351.)

dure section 904.1, subdivision (a) and also an "order granting . . . an injunction" made appealable by subdivision (f) of section 904.1.[4] In response, the Board argues (1) a superior court enforcement order is interlocutory, not final, (2) the ALRA makes the superior court order nonappealable by deeming it the "exclusive method" of redressing unfair labor practices, and (3) a finding of appealability could frustrate the ALRA's purpose of prompt enforcement. As the statute is written, we can accept none of these theories.

In a case involving this same grower, we recently discussed at length the nature and theory of judicial review and enforcement of ALRB orders. In *Tex-Cal, supra,* 24 Cal.3d 335, the issue was whether constitutional limitations on the original jurisdiction of the Courts of Appeal (Cal. Const., art. VI, §§ 10, 11) supersede that portion of section 1160.8 which calls for original review by a Court of Appeal of a challenged final order of the ALRB.[5]

We found that jurisdiction to *review* such orders stems from the Court of Appeal's authority to issue original extraordinary writs in the nature of certiorari or mandamus. (24 Cal.3d at p. 350.) The power to *enforce* orders which it has affirmed on review also arises, we said, from the Court of Appeal's "extraordinary writ" jurisdiction, since an order for compliance with a final directive of the ALRB is tantamount to a writ of mandate. We declared, "[a] proceeding under section 1160.8 to compel an employer or a labor organization to perform acts required by an ALRB order . . . is a proceeding in the nature of mandamus within the meaning of article VI, section 10 of the Constitution." (*Id.,* at p. 352.)

Article VI, section 10 grants extraordinary-writ jurisdiction to superior courts as well. And the operative effect of a superior court judgment ordering enforcement where review of the ALRB decision was not sought, or was denied, is exactly the same as that of a Court of Appeal judgment for enforcement after review. Of course, with limited statutory exceptions, superior court judgments in mandamus are appealable. (Code Civ. Proc., §§ 904.1, subd. (a)(4); 1110.)

---

[4] Section 904.1 provides in pertinent part: "An appeal may be taken from a superior court in the following cases: [¶] (a) From a judgment, except an interlocutory judgment, . . . [¶] (f) From an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction. . . ."

[5] Section 10 of article VI provides in pertinent part that "[t]he Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings" and "in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." Section 11, as revised in 1966, gives the Courts of Appeal "*appellate* jurisdiction when superior courts have original jurisdiction and in other causes prescribed by statute." (Italics added.)

■ The Board argues, however, that the ALRA-authorized superior court judgment is not a "final" judgment, and thus not appealable, because further proceedings in contempt are necessary to force compliance. ■ But a judgment or decree which leaves nothing for further determination between the parties except the fact of compliance or noncompliance with its terms is final, not interlocutory. (E.g., *Olson* v. *Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720]; *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 669-670 [123 P.2d 11].)

■ The case on which the Board relies for its theory of nonfinality is inapposite. In *Gue* v. *Dennis* (1946) 28 Cal.2d 616 [170 P.2d 887], a contractor refused to comply with investigatory subpoenas duces tecum issued by the Labor Commissioner. The statutes provided that obedience to such subpoenas "shall be enforced by the courts." The superior court, after hearing on an order to show cause, directed the contractor to obey the subpoenas within a specified time "or be adjudged in contempt." With little discussion, this court held: "Section 93 of the Labor Code has as its objective an adjudication in contempt if noncompliance persists. This being so, an order directing compliance, which *expressly* contemplates a further order, is intermediate in character, and any review thereof should await a subsequent adjudication in contempt. [Citations.]" (P. 617, italics added.)

Later authority has noted that *Gue* applies, by its terms, only when the enforcement order specifically states that further proceedings in contempt are contemplated. (*Dow* v. *Superior Court* (1956) 140 Cal.App.2d 399, 410-411 [297 P.2d 30].) Were this limitation not recognized, the *Gue* holding might quickly swallow large portions of the rule of appealable final judgments. Contempt is the sanction for refusal to comply with any injunction or writ of mandate or prohibition. If this fact alone made *Gue* applicable, all such orders and judgments would be nonappealable.[6]

---

[6] Though *Gue* does not say so, its holding may have been influenced by the fact that the order there at issue was not a final resolution of a lawsuit, but dealt only with enforcement of preliminary subpoenas issued by the Labor Commissioner in his investigatory capacity. The court may have feared the multiplicity of appellate court proceedings if all enforcement orders in such cases gave rise to an appeal of right.

Similar considerations distinguish *Jasper Constr., Inc.* v. *University Casework Systems, Inc.* (1974) 39 Cal.App.3d 582 [114 Cal.Rptr. 143], on which the Board also relies. In *Jasper,* the court considered the statutory scheme by which a subcontractor who claims money due from the general contractor on a public project may issue a "stop notice." This notice forces the public agency to withhold the full amount of the subcontractor's claim from sums otherwise due the general contractor, unless the latter posts a bond for 125 percent of the claim. The general contractor may, however, commence a summary affidavit proceeding in superior court, seeking to reduce the bond on grounds the claim is invalid or inflated. (Civ. Code, § 3179 et seq.). The Court of Appeal found that the bond proceeding produced only a nonappealable "order," not an appealable "judgment." As it noted, the bond proceeding has no res judicata effect on the underlying claim between the contractors. (39 Cal.App.3d at p. 585; see

The Board disclaims such a broad reading of *Gue*. It argues that superior court enforcement under section 1160.8 belongs in a narrow category of injunctive judicial orders which are interlocutory, and thus nonappealable, in that they are intended only as immediate precursors to contempt. Unlike most injunction or mandamus actions, the Board suggests, the section 1160.8 proceeding has only a pro forma purpose: to convert a preexisting, unchallengeable administrative order into a judicial one, so that, as in *Gue,* the sanction of contempt can immediately be brought to bear. (Code Civ. Proc., § 1209, subd. (a)5.)

However, nothing in section 1160.8 suggests any departure from the normal rule that injunctions and final judgments which form the basis for contempt sanctions are appealable. Section 1160.8 merely authorizes the superior court to enforce the ALRB order "by injunction or other proper process." The purpose of any judicial order which commands or prohibits specific conduct is to make the sanction of contempt available for disobedience. As we have noted, this fact does not render such an order "nonfinal," and thus nonappealable.

The Board urges alternatively that section 1160.9 expressly denies an appeal by making the procedures set forth in section 1160.8 the "exclusive method of redressing unfair labor practices." This exclusivity provision, the Board suggests, applies the Legislature's wish for quick and final judicial enforcement once the administrative order is no longer subject to review on the merits.

However, like the court below, we see no clear intent in section 1160.9 to contravene the general principles of appealability. The Legislature knew of the rule allowing appeal of all injunctions and final judgments (Code Civ. Proc., §§ 904.1, subds. (a), (f), 1110, *supra*), when it provided that the superior court should enforce a final order of the ALRB by "writ of injunction or other proper process."

The Board cites *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720 [192 P.2d 916] to support its view that the "exclusive method" language of section 1160.9 indicates an intent to supersede the general appeal statute. The case is inapposite. There a statute expressly prohibited any judicial action to prevent collection of an unemployment insurance contribution found due by the California Employment Stabilization Commission. This court therefore held that mandamus would not lie to overturn the Commission's determination in advance of payment; the only judicial remedy was a refund action.

---

Civ. Code, § 3205.) Such *is not the case with a superior court judgment enforcing a final deci-sion and order of the ALRB.*

The ALRA, however, calls for judicial enforcement of an ALRB order by process in the nature of mandate or injunction. While this judicial proceeding is the "exclusive method" of enforcement, it is one which by nature comes under the general appeal statute, and nothing in the ALRA states or implies an exception.

The Board isolates an assertion in *Modern Barber Col.* that "the Legislature has the power to declare by statute what orders are appealable, and unless a statute does so declare, the order is not appealable. [Citations.]" (31 Cal.2d at p. 728.) But this passage only indicates that there is no *constitutional* right to review of a judicial order, either by appeal or mandamus. As noted, Code of Civil Procedure section 904.1, the general appeal statute, provides the legislative authority for appeal of superior court enforcement orders under section 1160.8. ■ It has long been established that the statutory right of appeal of final judgments and orders extends even to "special proceedings [including] those intended to be summary in nature" unless the Legislature has expressly prohibited an appeal in the particular case. (*Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 343 [116 Cal.Rptr. 97, 525 P.2d 1273]; *People* v. *Bank of San Luis Obispo* (1907) 152 Cal. 261, 263-267 [92 P. 481].)

■ We sympathize with the Board's desire for prompt enforcement of its final order once the order is beyond review on the merits. And we recognize the potential for delay in frivolous appeals from superior court enforcement judgments, which may often involve little exercise of judicial discretion. (See discussion, *post.*) Nonetheless, we can find no principled way to characterize a section 1160.8 enforcement judgment which would take it outside normal rules of appealability.

We are not convinced by the contrary analysis of *Abatti Produce, supra,* 168 Cal.App.3d 504. There, the Court of Appeal relied heavily on the "exclusive method" language of section 1160.9, and upon an expansive reading of *Gue, supra,* 28 Cal.2d 616. We have explained why we find such reasoning unpersuasive.

We therefore hold that a superior court judgment enforcing a final ALRB order is appealable. We disapprove *Abatti Produce, supra,* 168 Cal.App.3d 504, to the extent that decision is inconsistent with our views.[7]

---

[7]The Board perceives a disturbing anomaly in the result we reach. It notes that, under section 1160.8, a party has *no right* to judicial review of the *merits* of an ALRB order; a petition for review to the Court of Appeal may be denied summarily (*Tex-Cal, supra,* 24 Cal.3d at pp. 350-351), as may a subsequent petition for review to this court (see Cal. Rules of Court, rules 28(f), 29(a)). Why, then, the Board asks, should one have an *appeal of right* from a superior court enforcement order, which can only be entered after the merits of the ALRB order

In most cases, as the court below emphasized, the issues on appeal from a superior court enforcement judgment will be limited. Procedural regularity and refusal to comply are the only points which can be raised. (§ 1160.8.) When a Court of Appeal determines that an appeal is frivolous, it may exercise its power to dismiss the appeal (see, e.g., *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 658 [94 Cal.Rptr. 398, 484 P.2d 70]) and, after proper notice and hearing, to award damages against the appealing party (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a); see *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645-654 [183 Cal.Rptr. 508, 646 P.2d 179]).[8]

One other matter remains for decision. The Board sought to obtain a contempt citation against Tex-Cal for alleged violations of the enforcement judgment during the time Tex-Cal's appeal was pending. After hearing, the superior court discharged the order to show cause re contempt, finding that the judgment was automatically stayed pending appeal. The Board sought mandate in the Court of Appeal to reinstate the contempt proceeding. The Court of Appeal granted the writ in part. It concluded that, under the general appellate-stay provisions (§ 916 et seq.) contained in Part 2 of the Code of Civil Procedure, only *mandatory* portions of the injunctive enforcement judgment were subject to an automatic stay. (E.g., *Kettenhofen* v. *Superior Court* (1961) 55 Cal.2d 189, 191 [10 Cal.Rptr 356, 358 P.2d 684]; *Byington* v. *Superior Court* (1939) 14 Cal.2d 68, 70 [92 P.2d 896].) Therefore, the Court of Appeal ordered recommencement of contempt proceedings to determine whether, pending the appeal, Tex-Cal had violated unstayed *prohibitory* portions of the judgment.[9]

As in the Court of Appeal, the Board argues that *no* portion of the enforcement order was automatically stayed pending appeal because the summary enforcement procedure set forth in section 1160.8 is a "special

are beyond attack? Perhaps the Legislature could have devised a more logical review procedure, and it may amend the process as it sees fit. But our conclusions seem to us inescapable when section 1160.8, as currently written, is construed in light of the rules which apply generally to extraordinary writs, and which govern review of the final judgments of superior courts and courts of appeal respectively.

[8] As we recently suggested in *Coleman* v. *Gulf Insurance Group* (1986) 41 Cal.3d 782, 790, footnote 5 [226 Cal.Rptr. 90, 718 P.2d 77], both dismissal and the award of damages for a frivolous appeal may occur at an early stage of the appeal and need not await an opinion affirming the judgment.

[9] The Court of Appeal found that the enforcement judgment was "prohibitory" insofar as it directed Tex-Cal to "cease and desist" from unilateral subcontracting and discriminatory discharges. However, those portions of the judgment which required affirmative acts, such as reinstatement, make-whole, and mailing and posting notice, were "clearly mandatory."

Similar stay rules apply to superior court judgments granting extraordinary writ relief. Thus, a judgment granting a writ of *mandate*—which is issued to *"compel the performance of an act* which the law specifically enjoins" (Code Civ. Proc., § 1085, italics added)—is automatically stayed pending appeal with limited statutory exceptions. (*Id.,* § 1110b.)

proceeding" to which the appellate-stay provisions of Part 2 of the Code of Civil Procedure do not apply. We disagree.

■ This court long ago held that Part 2 of the Code of Civil Procedure extends generally only to civil "actions," and not to "special proceedings." Unless the statutes establishing a "special proceeding" expressly incorporate the appellate-stay provisions of Part 2, they are inapplicable, and a final order in the "special proceeding" is not automatically stayed pending appeal. (*Carpenter* v. *Pacific Mut. L. Ins. Co.* (1939) 13 Cal.2d 306, 311 [89 P.2d 637].)

■ The Board urges that the section 1160.8 enforcement procedure is a "special proceeding" because it vindicates rights unknown at common law, vests minimal discretion in the superior court, and contemplates prompt compliance once the merits of the ALRB decision are beyond review.

■ The terms "action" and "special proceeding" have been distinguished loosely in a number of contexts. However, for purposes of applicability of Part 2 of the Code of Civil Procedure, the definitions are those set forth in Code of Civil Procedure sections 22 and 23. (*Tide Water Assoc. Oil Co.* v. *Superior Court* (1955) 43 Cal.2d 815, 821 [279 P.2d 35].) There an "action" is defined as "an ordinary [judicial] proceeding . . . by which one party prosecutes another for the declaration, enforcement, or protection of a right or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) "[S]pecial proceeding[s]" include "[e]very other remedy . . . ." (*Id.,* § 23.) Accordingly, this court held that a statutory proceeding brought by a state agency on behalf of the public to enjoin unreasonable waste of gas by oil-field operators was an "action," not a "special proceeding." (*Tide Water, supra,* 43 Cal.2d at pp. 822-823.)[10]

Applying the test of *Tide Water, supra,* the instant Court of Appeal recently concluded that a superior court proceeding under section 1160.4 of the ALRA for "temporary relief or restraining order" pending ALRB adjudication of charges is an "action" to which normal provisions for stay pending appeal extend. (*Agricultural Labor Relations Bd.* v. *Superior Court* (*Sam Andrews' Sons*) (1983) 149 Cal.App.3d 709, 713 [196 Cal.Rptr. 920].)

---

[10] As *Tide Water* noted, the proceeding at issue in *Carpenter, supra,* 13 Cal.2d 306, was a petition in superior court by the Insurance Commissioner, "acting pursuant to provisions of the Insurance Code, . . . for an order affirming a plan which he proposed for the rehabilitation of an insolvent insurance company. This court, in holding that a special proceeding and not an action was involved, pointed out that the commissioner was not prosecuting another party for the declaration, enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense,—that it was not a proceeding in which one 'party is prosecuting another party at all.' [Citation.]" (43 Cal.2d at p. 823.)

"We recognize," said the court, "that a . . . section 1160.4 action is 'special' in that it is 'unique.' It only allows temporary relief by way of injunction pending a final determination of the merits of the underlying labor dispute by the ALRB. Nevertheless, section 1160.4 proceedings are not 'special proceedings' in the narrow sense defined by Code of Civil Procedure section 23. Section 1160.4 only authorizes a traditional equitable remedy. Also, the action is adversarial; one party (the ALRB) prosecutes another (a farmer or union) for the protection of a right or the prevention of a wrong (the rights given to agricultural workers by the [ALRA]). These features of a section 1160.4 proceeding make it an 'action' as defined by Code of Civil Procedure section 22. Hence, . . . section 1160.4 actions are subject to Part 2 of the Code of Civil Procedure, including . . . section 916." (*Id.*, at p. 715.)

The Board argued vigorously that automatic stay of section 1160.4 injunctions would frustrate the ALRA's purpose to prevent ongoing violations while charges were pending. The Court of Appeal demurred. If *affirmative* injunctive relief was necessary to preserve the status quo pending appeal, the court noted, the appellate court could exercise its supersedeas power. (*Id.*, at p. 719; see Code Civ. Proc., § 923; *People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 536-537 [72 Cal.Rptr. 790, 446 P.2d 790].)[11]

▮ Similar considerations apply to the superior court procedure set forth in section 1160.8. In an adversarial setting, the ALRB prosecutes a farmer or union to enforce agricultural workers' rights, and to prevent and redress unfair labor practices. Enforcement is by traditional legal and equitable remedies, "injunction or other proper process" tantamount to mandate (see discussion, *ante*). It matters not that the "action" thus instituted concerns rights and wrongs defined only by statute and unknown to the common law.

The "discretion" vested in the superior court under section 1160.8 is less than that provided by section 1160.4. However, enforcement of the ALRB order does require judicial resolution of the limited legal and factual issues set forth in the statute.

Finally, as in the case of section 1160.4, the ALRA's purposes are not unduly frustrated by applying normal appellate-stay rules to superior court

---

[11] The Court of Appeal acknowledged federal procedural rules which provide that injunctions issued under the parallel provision of the NLRA, section 10(j) (29 U.S.C.A. § 160(j)), are not stayed pending appeal. The court, however, invoked the rule of *Tex-Cal, supra,* 24 Cal.3d 335, that California procedural rules apply to the ALRA, even though they differ from federal procedural rules governing identical portions of the NLRA. (149 Cal.App.3d at p. 718; see *Tex-Cal, supra,* at p. 351.)

enforcement orders under section 1160.8. Prohibitory portions of an order are not automatically stayed pending appeal, and if affirmative injunctive relief is necessary to preserve the status quo pending appeal, an *Emeryville* stay, *supra,* 69 Cal.2d 533, can be obtained from the reviewing court. We conclude that a superior court enforcement order under section 1160.8 is subject to the appellate-stay provisions governed by Part 2 of the Code of Civil Procedure.

The judgments of the Court of Appeal are affirmed. Without ruling on the remaining issues addressed in the Court of Appeal opinion, we order that it be published in the Official Reports. ■ ■■■■ (Cal. Rules of Court, rule 976(d).)[12]

Lucas, C. J., Eagleson, J., and Kaufman, J., concurred.

**BROUSSARD, J.**—I respectfully dissent. The superior court's function under Labor Code section 1160.8[1] is simply to enforce orders of the Agricultural Labor Relations Board (ALRB or Board) that are no longer subject to review on their merits. To allow the noncomplying party to take an appeal

---

[12]Under former rules, our grant of "hearing" after decision by the Court of Appeal resulted in a "transfer" of the "cause" to this court for "decision." The Court of Appeal's opinion was thus entirely vacated, and our subsequent opinion, which addressed anew all issues raised by the appeal, became the only appellate opinion governing the case. (See Cal. Const., art. VI, former § 12; Cal. Rules of Court, former rule 28(a).) However, on November 6, 1984, the voters amended our constitutional jurisdiction by adopting Proposition 32, which added new subdivisions (b) through (d) to article VI, section 12. Under Proposition 32 and its supporting rules, effective May 6, 1985 (e.g., Cal. Rules of Court, new rules 28(e)(2), 29.2(a), 29.4(a); see also Advisory Com. Comments to rules 28(e)(2), 29.2(a)), we may merely "review" the Court of Appeal's decision. We need not address portions of the opinion as to which the parties did not seek review, and the Court of Appeal's opinion remains determinative on those matters.

Federal procedure provides for similar limited review by the United States Supreme Court of decisions of the federal courts of appeals. No federal rule provides for "depublication" of a court of appeals' decision once the Supreme Court grants certiorari or notes appellate jurisdiction. The lower court opinion thus remains available as citable precedent on issues not reached by the Supreme Court. By contrast, a grant of review by this court determines that the Court of Appeal's opinion shall not be published unless we order otherwise. (Cal. Rules of Court, rule 976(d).

If, before ordering postreview publication, we were required to formally decide the correctness of the Court of Appeal's opinion on issues beyond the scope of our grant of review, our authority to order publication of the lower court opinion would be pointless, since the relevant analysis and precedent would then appear in *our* opinion, as under the old procedure. The efficient use of our new "review" jurisdiction suggests that, as in the federal system, significant Court of Appeal opinions should be available as citable precedent with respect to issues not reached by us on subsequent review. We deem the lower court's opinion here to be beneficial and worthy of publication in that regard, but our order for publication does not necessarily imply agreement with the Court of Appeal's analysis on issues not addressed in our opinion.

[1]Unless otherwise indicated, all section references are to the Labor Code.

from the superior court's action will "thwart one of the Legislature's purposes in enacting the ALRA [Agricultural Labor Relations Act]—the speedy resolution of agricultural labor disputes." (*Agricultural Labor Relations Board* v. *Abatti Produce Inc.* (1985) 168 Cal.App.3d 504, 514 [214 Cal.Rptr. 283].)

"Labor Code section 1160.8 enumerates the circumstances under which courts have jurisdiction to review decisions of the Board." (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 555 [147 Cal.Rptr. 165, 580 P.2d 665].) It provides for only two types of judicial proceedings: (1) appellate review by discretionary writ; and (2) superior court enforcement of final Board orders. The former affords the aggrieved party an opportunity to seek full review of the merits of the Board's order; the latter permits the superior court to determine only "that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order. . . ." The superior court "shall not review the merits of the [Board] order." (§ 1160.8.)

The section 1160.8 procedures are an essential part of "the exclusive method of redressing unfair labor practices" under the ALRA. (§ 1160.9.)[2] The Legislature circumscribed the superior court's function under section 1160.8 to allow the ALRB to expeditiously transform its administrative orders into court orders that would be enforceable by the contempt power of the court if there is a refusal to voluntarily comply. The majority's application of the general rule of appeals to such proceedings frustrates the legislative purpose of ensuring "stability in labor relations" (Stats. 1975, Third Ex. Sess., ch. 1, § 1, p. 4013) by encouraging dilatory tactics.[3] Realistically, there is no need for a right to appeal from the enforcement order.

The majority's interpretation of section 1160.8 also creates anomalous results. Under section 1160.8, the Court of Appeal, upon granting review of

[2] Section 1160.9 provides: "The procedures set forth in this chapter shall be the exclusive method of redressing unfair labor practices." Section 1165, subdivision (a), which gives the superior court the greater power to hear and decide "[s]uits for violation of contracts" between agricultural labor unions and agricultural employers, is contained in a subsequent chapter.

[3] The stability of agricultural labor relations is greatly influenced by the appeals process, and the Legislature intended that Board orders resolving labor disputes be enforced as expeditiously as possible. As the Court of Appeal observed in *Abatti, supra,* 168 Cal.App.3d at page 514, "[t]his purpose is evidenced by the shortened time period for seeking review of the ALRB's order, the option of summary denial of a petition for review by the Court of Appeal and by the abbreviated superior court procedures. (Lab. Code, § 1160.8; *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* [(1979)] 24 Cal.3d 335, 351 [156 Cal.Rptr. 1, 595 P.2d 579]; see also *Belridge Farms* v. *Agricultural Labor Relations Bd., [supra, ]* 21 Cal.3d [at p. 558] [147 Cal.Rptr. 165, 580 P.2d 665].)" Further evidence of this purpose is that the Legislature gave the Court of Appeal the power and discretion to modify and enforce orders of the Board in the review proceeding. (§ 1160.8.)

the Board's order, "shall have jurisdiction . . . to make and enter a decree enforcing [or] modifying and enforcing as so modified . . . the order of the board." (§ 1160.8.) If the Court of Appeal exercises this power to enforce the Board's order, the aggrieved party may litigate the issue of compliance only in a contempt proceeding. (See *In re Berry* (1968) 68 Cal.2d 137, 148-149 [65 Cal.Rptr. 273, 436 P.2d 273].) If the order is enforced by the superior court, however, the majority permits the party to obtain risk-free review of the compliance issue. Thus, a party can substantially delay the necessity for complying simply by not seeking review in the Court of Appeal. The Legislature cannot have intended this result.

The majority's professed inability to find any "principled way" around the normal rules of appealability (*ante,* p. 705) stems from a too narrow reading of *Gue* v. *Dennis* (1946) 28 Cal.2d 616 [170 P.2d 887]. This court said in *Gue* that section 93, which provides that obedience to the Labor Commissioner's subpoenas "shall be enforced by the courts," "has as its objective an adjudication in contempt *if noncompliance persists.* This being so, an order directing compliance, which expressly contemplates a further order, is intermediate in character, and any review thereof should await a subsequent adjudication in contempt." (*Id.* at p. 617, italics added.) The majority concludes that the *Gue* holding does not preclude appealability of the present order because the order does not specifically state that further proceedings in contempt are contemplated.[4] (*Ante,* p. 703.) But the threat of contempt is clearly implicit in the statutory purpose of the superior court proceeding, which is to "enforce" the ALRB order. (§ 1160.8.) What distinguishes the *Gue* order from appealable final judgments is not its fortuitous reference to the possibility of contempt for noncompliance but the fact that the purpose of the proceeding in which it was issued was merely to "transform [an] administrative order into a court order" (*Abatti, supra,* 168 Cal.App.3d at p. 513), and not to resolve the merits of the administrative order. The requirement that the superior court determine "that the person refuses to comply with the [ALRB] order" (§ 1160.8) is consistent with *Gue,* where the Labor Commissioner averred, and the court presumably found, a prior willful refusal to obey the subpoenas. Accordingly, I con-

---

[4]The majority relies on *Dow* v. *Superior Court* (1956) 140 Cal.App.2d 399, 410-411 [297 P.2d 30], for this proposition. That case, however, is inapposite. In *Dow,* the superior court, in a probate proceeding, issued an order that the administratrix pay fees and costs and convey title. The administratrix filed an appeal from the order. Subsequently, a contempt action was commenced against the administratrix. The Court of Appeal held that the order enforcing the probate court's decree was stayed because "[t]he petition which initiated the proceeding which culminated in the [enforcement] order . . . neither expressly nor by necessary implication indicates that a contempt proceeding is in progress." (*Id.* at p. 410.) In the instant case, however, the enforcement order was issued because noncompliance was already evident and continuing. The petition to the superior court clearly contemplated subsequent adjudication in contempt if noncompliance persisted.

clude that the superior court's order was not final and therefore not appealable.

I agree with the majority that if an appeal is allowed and affirmative injunctive relief is necessary to preserve the status quo pending appeal, the appellate court could exercise its supersedeas power. (*Ante*, p. 708.) Section 923 of the Code of Civil Procedure also gives an appellate court jurisdiction "to make any order appropriate to preserve . . . the effectiveness of the judgment subsequently to be entered . . . ." Thus, a showing that delay in enforcing the mandatory provisions of an ALRB order would nullify its effectiveness, coupled with a preliminary determination of lack of probable merit to the appeal, should lead the appellate court to order the mandatory provisions not stayed.[5]

Mosk, J., and Arguelles, J., concurred.

---

[5] The Board also may be entitled to relief from an automatic stay under section 1110b of the Code of Civil Procedure. That section provides: "If an appeal be taken from an order or judgment granting a writ of mandate the court granting the writ, or the appellate court, may direct that the appeal shall not operate as a stay of execution if it is satisfied upon the showing made by the petitioner that he will suffer irreparable damage in his business or profession if the execution is stayed." The enforcement order, under the majority's reasoning, is tantamount to a writ of mandate. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd., supra,* 24 Cal.3d at pp. 351-352.) As the parties have not briefed the issues of whether section 1110b applies to public agencies (see, e.g., *Social Services Union* v. *County of San Diego* (1984) 158 Cal.App.2d 1126, 1131 [205 Cal.Rptr. 325]; *Hayworth* v. *City of Oakland* (1982) 129 Cal.App.3d 723, 728 [181 Cal.Rptr 214]) and whether an undertaking would be required before a trial court lifts an automatic stay (see Code Civ. Proc., § 917.9), I do not address them here.