Filed 12/4/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PUBLIC EMPLOYMENT RELATIONS BOARD, | No. B288594 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS161585) |
| v. | |
| BELLFLOWER UNIFIED SCHOOL DISTRICT, | |
| Defendant and Appellant; | |
| CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, CHAPTER NO. 32, | |
| Real Party in Interest. | |

APPEAL from order granting petition for writ of mandate. Mary H. Strobel, Judge. Affirmed.

Law Offices of Eric Bathen, Eric J. Bathen, and Richard D. Brady for Defendant and Appellant Bellflower Unified School Distrct.

J. Felix DeLaTorre, General Counsel, Wendi L. Ross, Deputy General Counsel, Laura Z. Davis and Sheena J. Farro, Regional Attorneys for Plaintiff and Respondent Public Employment Relations Board.

Andrew J. Kahn, Chief Counsel and Christina C. Bleuler, Deputy Chief Counsel, for Real Party in Interest California School Employees Association.

---

Real party in interest California School Employees Association (CSEA), the exclusive representative of most classified employees employed by appellant Bellflower Unified School District (the District), filed two unfair practice charges against appellant in 2010 and 2013 under the Education Employment Relations Act (Govt. Code, § 3540 et seq., EERA).[1]  After notice and hearing, respondent Public Employment Relations Board (PERB or the Board), the agency charged with interpreting and administering the EERA, issued two decisions and orders requiring, among other things, that appellant post two specific notices to its employees.  After the decisions and orders became final in

---

[1]  Undesignated statutory references are to the Government Code.

2015, appellant refused to post the notices, claiming that they were out of date and misleading. PERB filed the underlying enforcement proceeding, and the trial court issued a writ of mandate instructing appellant to comply with the Board's two orders. Appellant appeals, contending that PERB failed to prove the decisions and orders were issued pursuant to its established procedures, and that PERB's General Counsel abused his discretion under a regulation authorizing him to conduct an investigation or hearing prior to filing an enforcement proceeding.

We find substantial evidence supports the trial court's conclusion that the decisions and orders were issued pursuant to PERB's procedures, and that there was no abuse of discretion on the part of the General Counsel. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND
### A. *Decision and Order No. 2385*

During the 2009 to 2010 school year, appellant decided to close one of its elementary schools, Las Flores, at the end of the school year. The proposed closure had the potential to eliminate some classified positions. On multiple occasions CSEA demanded a meeting to negotiate the effects of the proposal, but no meeting occurred. On November 10, 2010, CSEA filed an unfair practice charge with PERB, alleging that appellant failed to negotiate the closure, and that the

3

closure caused layoffs and reductions in hours, in violation of section 3543.5, subdivisions (a), (b) and (c) of the EERA.[2]

The unfair practice charge was assigned to PERB's Office of General Counsel (OGC) for investigation and review. The attorney to whom it was assigned notified appellant that the charge was being reviewed and gave appellant an opportunity to file a response.

On January 20, 2012, PERB issued a complaint, alleging that appellant had committed an unfair practice and had violated section 3543.5, subdivisions (a) through (c) of the EERA, by failing to meet and bargain in good faith with CSEA over the effects of the proposed layoffs, and that appellant had implemented layoffs and reductions in hours for its employees. The OGC convened an informal conference with the parties to explore the possibility of settling the complaint. The matter did not settle.

---

[2] Section 3543.5, subdivisions (a) through (c) provide: "It is unlawful for a public school employer to do any of the following: [¶] (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. . . .[¶] (b) Deny to employee organizations rights guaranteed to them by this chapter. [¶] (c) Refuse or fail to meet and negotiate in good faith with an exclusive representative. Knowingly providing an exclusive representative with inaccurate information, whether or not in response to a request for information, regarding the financial resources of the public school employer constitutes a refusal or failure to meet and negotiate in good faith."

The matter was assigned to an administrative law judge (ALJ) for resolution. At a noticed hearing on July 10, 2012, CSEA presented evidence. Appellant appeared, but declined to present evidence. On October 12, 2012, after the parties submitted closing briefs, the ALJ issued a proposed decision, finding that appellant had violated the EERA by failing to bargain in good faith with CSEA over the effects of its proposed layoffs.

Both sides filed "exceptions" to the ALJ's proposed decision, causing the matter to be sent to PERB for a final decision. On June 30, 2014, the Board issued Decision No. 2385, essentially adopting the ALJ's findings of fact and conclusions of law and rejecting both parties' exceptions. Included with the decision was Order No. 2385, requiring appellant to cease and desist from: (1) failing to bargain in good faith with CSEA over the foreseeable impact of the closure of Las Flores and the abolishment of classified positions, and (2) denying classified bargaining unit members the right to be represented by CSEA. It required appellant to take the following affirmative actions: (1) meet and negotiate in good faith with CSEA, (2) provide affected bargaining unit members with limited back pay, (3) post a specific "Notice to Employees" both at employee work locations and by electronic means for 30 consecutive work days, and (4) provide PERB with written notification of the

5

actions taken to comply with the order.[3]  Requirement (2), the "limited backpay remedy," required CSEA to "submit its

---

[3]  The appended Notice to Employees stated that appellant would "CEASE AND DESIST" from:  "1. Failing to bargain in good faith with CSEA over the foreseeable impacts of the closure of Las Flores and the abolishment of classified positions; [¶] 2. Denying classified bargaining unit members the right to be represented by CSEA; [¶] 3. Denying CSEA the right to represent its members."  It said appellant would take the following "AFFIRMATIVE ACTIONS DESIGNED TO EFFECTUATE THE POLICIES OF THE EERA":  "1. Within twenty (20) days of the service of a final decision in this matter, meet and negotiate in good faith with CSEA, upon receipt of CSEA's proposals addressing the foreseeable effect of the May 2010, decision to close Las Flores and abolish classified positions. [¶] 2. Compensate at their normal rate, any CSEA bargaining unit members who were affected by layoffs resulting from the May 6, 2010, decision by the District's Board of Education . . . to close Las Flores and abolish classified positions.  CSEA shall submit its bargaining proposals within twenty (20) days following the service of this decision and order.  Should CSEA fail to submit such proposals within this twenty (20)-day time frame, this limited backpay remedy shall not go into effect.  Provided CSEA submits its proposals, payments shall remain in effect until the earliest of the following conditions:  (1) the date the parties reach an agreement on those subjects pertaining to the effects of the May 2010 [decision], by the District School Board to close Las Flores and abolish classified positions; (2) the parties[] exhaust the [']negotiating an impasse['] procedures prescribed by EERA; or (3) subsequent failure by CSEA to bargain in good faith."  The notice stated it was an "official notice" that "must remain posted for at least thirty (30) consecutive workdays from the date of posting" and "must not be reduced in size, defaced, altered or covered with any other material."

bargaining proposals within twenty (20) days following the service of this Decision and Order," and stated that if CSEA failed to submit such proposals within the requisite time frame, "this limited backpay remedy shall not go into effect."

Appellant's petition for review in the Court of Appeal was denied. Its petition in the Supreme Court was also denied. After Decision No. 2385 became final, CSEA withdrew its request to bargain, eliminating requirements (1) and (2) of the order. This left requirements (3) and (4) -- posting the Notice to Employees and notifying PERB of the actions taken to comply with the order.

In August 2015, PERB advised appellant by letter that Decision No. 2385 was final, giving appellant until September 15, 2015 to comply by filing a statement describing the dates the notice to Employees was posted and a computation of the days deemed to be work days. Appellant responded, stating that it had no location "where notices 'customarily are posted,'" and that it had sent no electronic notices because, in its view, it had no employees to whom the notice applied. Appellant reported that it had, however, posted a modified notice in its personnel office.[4] In

_____

[4] The notice posted by appellant stated: "After a hearing in Unfair Practice Case No. LA-CE-5508, *California School Employees Association and its Chapter 32 v. Bellflower Unified School District*, in which all parties had the right to participate; it has been found that the Bellflower Unified School District (District) during the 2009-2010 school year violated the [EERA] . . . . [¶] As a result of this conduct, we have been ordered to post
(*Fn. is continued on the next page.*)

7

subsequent letters, appellant contended that posting the Notice to Employees required by the decision "would be very misleading to all classified employees because of CSEA's decision not to request bargaining or compensation." The OGC responded that appellant had a "fundamental misunderstanding . . . regarding the remedial purpose of a notice posting. The purpose of a notice posting is not solely to inform those directly affected by a respondent's unlawful act. As the Board explained in *Trustees of the California State University* (1988) PERB Decision No. HO-U-335-H [1988 Cal. PERB LEXIS 49] "Order No. Ad-174-H[] . . . : [¶] '[T]he purpose of a posting requirement is to inform all who would naturally be concerned (i.e., employees of the District, as well as management and supervisory personnel who carry out District policies) of activity found to be unlawful under the Act in order to provide guidance and prevent a reoccurrence.'"[5]

PERB made multiple attempts to obtain appellant's compliance. On March 2, 2016, the OGC advised appellant

_____

this notice." Appellant offered at a later point to post a modified notice containing the cease and desist portion of the notice to Employees appended to Decision No. 2385.

[5]     CSEA sent a letter emphasizing that the notice would "inform[] the unit employees of the protections afforded by PERB in [events such as] actions by [appellant] to close schools or lay off employees without negotiating with their exclusive representative."

8

that the Board had authorized it to seek enforcement of Order No. 2385 in superior court.[6]

B. *Decision and Order No. 2455*

In 2012, CSEA received information indicating appellant had failed to pay certain employees who had worked in July for the July 4th holiday. CSEA asked the district superintendent for a list of all unit members performing summer work for appellant and for their salary warrants. The superintendent initially did not respond and later sent a letter claiming to have no obligation to respond, but ultimately supplied a list CSEA believed to be incomplete.

On January 11, 2013, CSEA filed an unfair practice charge with PERB, alleging that appellant had violated section 3543.2, subdivisions (a), (b) and (c) of the EERA by changing its holiday pay policy without giving CSEA notice or an opportunity to bargain. PERB advised appellant of the charge and offered it an opportunity to provide a response. Appellant filed a preliminary response.

---

[6] In one of its letters, the General Counsel stated: "[T]he General Counsel does not have the authority to make any modification to the Board's orders. On the contrary, I am obligated by the [EERA] and PERB's regulations to insure compliance with the orders as written and, if authorized by the Board, to initiate an enforcement action in the superior court. [Citation.]"

On June 3, 2013, after investigation and review, PERB issued a complaint, alleging that appellant had committed an unfair practice by changing its holiday policy without affording CSEA an opportunity to negotiate the decision. An informal settlement conference convened by the OGC did not resolve the matter.

A noticed hearing was held on May 30 and July 22, 2014 at which CSEA presented evidence. Appellant again appeared but presented no evidence. On June 22, 2015, after receipt of the parties' post-hearing briefs, the ALJ issued a proposed decision and order, finding that appellant had violated the EERA by unilaterally changing its policy regarding holiday leave pay and failing to timely respond to CSEA's requests for information. Appellant filed exceptions to the proposed decision.

On September 30, 2015, the Board issued Decision No. 2455, adopting the ALJ's proposed decision. The Board specifically rejected appellant's contention that certain employees, such as bus drivers who did not work 12-month assignments, were not entitled to holiday pay, finding that "[u]nder the [collective bargaining agreement], employees included within the bargaining unit are entitled to holiday pay whether they work the holiday or not so long as they are on paid status on the working day immediately preceding or succeeding the holiday. The District's attempt to remove bus drivers and other CSEA-represented bargaining unit employees from coverage under the [collective bargaining agreement] by referring to them as 'as needed' or to their

10

assignments as 'extra-duty or summer session' or 'beyond their "regular" assignments' fails. These distinctions are nowhere to be found in the parties' negotiated labor agreement."

The decision included a remedial order. Order No. 2455 required appellant to cease and desist from: (1) failing to negotiate in good faith by enacting unilateral policy changes and failing to timely respond to requests for information, (2) interfering with the right of unit employees to be represented by CSEA, and (3) denying CSEA its right to represent unit employees. The order required appellant to take the following affirmative actions: (1) rescind the policy change regarding holiday leave and abide by the terms of the parties' collective bargaining agreement; (2) make whole the affected employees for financial losses suffered; (3) either provide a complete response to CSEA's request for information or verify, in writing, to CSEA that the responses already provided were complete; (4) post a specific Notice to Employees in the form appended to the decision, both at employee work locations and electronically for 30 consecutive work days; and (5) provide PERB with written notification of the actions taken to comply with the order by a certain deadline.[7] Appellant did not seek judicial review of Decision No. 2455.

---

[7] The appended Notice to Employees stated that appellant would "cease and desist" from: "1. Failing to negotiate in good faith by enacting unilateral policy changes concerning issues within the scope of representation and by failing to timely

(*Fn. is continued on the next page*.)

On November 5, 2015, PERB sent a letter informing appellant that Decision No. 2455 was final, and identifying the remedial action to be taken by appellant to comply with Order No. 2455:  posting the Notice to Employees in the appropriate places for the requisite number of days and describing the steps taken to rescind the holiday pay policy change, make all unit employees affected by the change whole, and provide a complete response to CSEA's request for information or certify the previous response was complete.  The letter instructed appellant to file a

_____

respond to requests for necessary and relevant information by CSEA  [¶] 2. Interfering with the rights of unit employees to be represented by CSEA.  [¶] 3. Denying CSEA its right to represent unit employees."  It further stated that appellant would take the following "affirmative actions designed to effectuate the policies of EERA":  "1. Rescind the policy change regarding payment of holiday leave pay and abide by the terms under the July 1, 2007-June 30, 2010 collective bargaining agreement . . . .  [¶] 2. Make-whole unit employees . . . for financial losses suffered as a result of the District's unlawful action who were working and in paid status on either July 3, 2012 or July 5, 2012.  Any financial losses should be augmented with interest at a rate of 7 percent per annum.  [¶] 3. Either:  (1) provide a complete response to CSEA's request for information dated September 19, 2012; or (2) verify, in writing, to CSEA that the responses provided thus far are complete."  Like the prior notice, the notice required by Order No. 2455 stated it was an "OFFICIAL NOTICE" that "MUST REMAIN POSTED FOR AT LEAST THIRTY (30) CONSECUTIVE WORKDAYS FROM THE DATE OF POSTING" and "MUST NOT BE REDUCED IN SIZE, DEFACED, ALTERED OR COVERED WITH ANY OTHER MATERIAL."

compliance statement by November 19, 2015. PERB extended the deadline several times thereafter.

Appellant responded by stating that it had not posted the requisite Notice to Employees because it had no "place where it customarily post[s] items for CSEA unit members," and because the notice "does not represent the current status of the case and would mislead employees that they would be entitled to some compensation . . . ." Appellant further stated that it had "already paid the one employee [who] requested and was entitled to compensation for July 4, 2012 . . . ."[8]

During the exchange of letters, appellant proposed posting a modified notice containing only the cease and desist language from the Notice to Employees appended to Decision No. 2455. The General Counsel reiterated: "[T]he General Counsel does not have the authority to make any modifications to the Board's orders." The OGC reminded appellant that the purpose of a notice posting was not solely to inform those directly affected by a respondent's unlawful act, but also to "'inform all who would naturally be concerned . . . of activity found to be unlawful under the Act in order to provide guidance and prevent a reoccurrence.'" On March 2,

---

[8] CSEA disputed that contention, stating in a March 2016 letter to the OGC that appellant had "failed and refused to make whole the affected employees for their financial losses with interest." CSEA further represented that appellant had failed to respond to its information requests.

13

2016, the OGC informed appellant it had been authorized by the Board to seek enforcement of Order No. 2455.

C. *Petition for Writ of Mandate*

On April 1, 2016, PERB filed a petition for writ of mandate under Code of Civil Procedure section 1085 and Government Code section 3542, subdivision (d), seeking to enforce its two orders by obtaining a writ instructing appellant to comply with the terms and directives set forth in the orders.[9]  The petition asserted that appellant had a clear, present and ministerial duty to comply with the orders.

Appellant demurred, contending the matter should have been brought as a petition for administrative writ under Code of Civil Procedure section 1094.5 and that if governed by that provision, the petition was untimely.  The

---

[9]      Section 3542, subdivision (d), provides:  "If the time to petition for extraordinary relief from a board decision has expired, the board may seek enforcement of any final decision or order in a district court of appeal or a superior court in the district where the unit determination or unfair practice case occurred.  The board shall file in the court the record of the proceedings certified by the board, and appropriate evidence disclosing the failure to comply with the decision or order.  If, after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person or entity refused to comply with the order, the court shall enforce such order by writ of mandamus.  The court shall not review the merits of the order."

14

court overruled the demurrer, finding that the petition sought "to compel [appellant] to comply with . . . PERB's lawful orders and is therefore governed by CCP section 1085." After filing an answer, appellant sought to depose a number of witnesses and propounded other discovery requests, contending discovery was necessary to determine whether the orders were issued "'pursuant to procedures established by the [B]oard . . . .'" (Quoting § 3542, subd. (d).) The trial court issued a protective order quashing the discovery requests, finding that the determination whether an order was issued pursuant to PERB's procedures "would generally be based on an administrative record."

Relying on the administrative record and the facts set forth above, PERB moved for issuance of the requested writ of mandate. Appellant opposed, contending that PERB had failed to establish that its "enormously complex" procedures had been followed prior to issuing the two decisions and orders. It cited a number of PERB regulations, but failed to identify any applicable provisions that had been overlooked. Appellant also cited section 32980(a) of title 8 of the California Code of Regulations (CCR), which provides: "The [PERB] General Counsel is responsible for determining that parties have complied with final Board orders. The General Counsel or his/her designate may conduct an inquiry, informal conference, investigation, or hearing, as appropriate concerning any compliance matter. The Board itself may, based on a recommendation of the General Counsel, authorize the General Counsel to seek court

15

enforcement of a final Board order." Claiming to have been "encouraging resolution through negotiations" when it responded to the letters from PERB and the OGC concerning its failure to comply with the two orders, appellant contended that the General Counsel had failed to exercise discretion in determining whether to undertake any or all of the actions authorized by the regulation, and that his actions preceding the filing of the petition for writ of mandate were "'unreasonable and arbitrary.'" Finally, appellant contended that PERB had not established that it had authorized the OGC to file the petition for writ of mandate.

D. *Trial Court's Order*

The trial court granted the petition. In a detailed order, the court first addressed whether Order No. 2385 and Order No. 2455 were issued pursuant to procedures established by the Board. The court concluded, based on its review of the complete administrative record, that PERB had met its burden under section 3452, subdivision (d): "The administrative record demonstrates that PERB followed its regulation[s] when 'issuing' both orders. For Order No. 2385, following investigation of the underlying unfair practice charge . . . , PERB issued a complaint finding that [appellant] had committed an unfair practice under EERA. . . . ; Reg. § 32620.[] PERB held a formal administrative hearing on the complaint, which resulted in the issuance of a proposed decision by a PERB ALJ. . . ; Regs. §§ 32168, 32170, 32180, 32212, 32215.[] Both [appellant] and CSEA

16

appealed the proposed decision to the Board. . . ; Regs. §§ 32300, 32310.[]  In accordance with Reg. 32320, on June 30, 2014, the Board issued Decision No. 2385, which included Order No 2385, and served a copy on each party via U.S. mail.  [Citation.]  [¶] For Order No. 2455, following investigation of the underlying [unfair practice charge], PERB issued a complaint finding that [appellant] had committed unfair practices under EERA. . . ; Reg. § 32620.[] PERB held a formal administrative hearing which resulted in the issuance of a proposed decision by a PERB ALJ. . . ; Regs. §§ 32168, 32170, 32180, 32212, 32215.[]  The District subsequently appealed the proposed decision to the Board. . . ; Regs. §§ 32300, 32310.[]  In accordance with Reg. 32320, on September 30, 2015, the Board issued Decision No. 2455, containing Order No. 2455, and served it on the parties via U.S. mail.  [Citation.]"

The court observed that appellant had failed to identify any specific procedures PERB had failed to follow, and found that appellant had, in any event, waived any objections to the procedural regularity of the orders by failing to litigate the issue earlier.

With respect to the requirement of section 3542, subdivision (d), that the petitioner establish noncompliance, the court found that appellant had "effectively concede[d] that it ha[d] not complied [with either of the two orders]."

The court next addressed the contention that the General Counsel abused the discretion afforded by CCR, title 8, section 32980.  It found no such abuse:  "The provision

17

that '[t]he General Counsel . . . *may* conduct an inquiry, informal conference, investigation, or hearing, *as appropriate,*' clearly provides the General Counsel's Office with discretion to use a range of tools to effectuate compliance with the Board's decisions and orders. [Citation.] . . . [Appellant's] argument that alternative notices should have been negotiated is contrary to the mandates of the orders and the language contained in the Notices themselves, requiring [appellant to] post unaltered copies of the Notices appended to the decisions. Furthermore, the record reflects that PERB's OGC conducted an inquiry and investigation into whether [appellant] was complying with the orders, by exchanging several rounds of correspondence among the parties, and holding a teleconference. [Citations.] The District made clear in its communications with PERB that it was electing not to comply with the orders. [Citations.]" The court observed that in any event, "[a] post hoc agreement between only [appellant] and PERB to modify the Board's final orders arguably would interfere with CSEA's right to have the orders enforced. [Citation.]"

The court also addressed appellant's contention that "significant events have occurred since PERB issued the [two] Orders so that PERB's General Counsel should have negotiated with [appellant] and acceded to [appellant's] demands to revise the notices." The court was "not persuaded that [appellant's] reasons for refusing to comply with the Orders are appropriately asserted in this

18

enforcement proceeding," citing section 3542, subdivision (d)'s directive that the court "'shall not review the merits of the order,'" and noting appellant's failure to "cite[] authorities that would permit the court to assess whether the passage of time or other events ha[d] made the orders 'out of date'" or to present "evidence or argument that the time delay or other events have entirely mooted the remedial purposes of the Notices . . . ." (Italics omitted.) The court specifically found appellant's argument that the two orders would be misleading to employees to be "speculative and unpersuasive": "The notices contain the dates of the unfair labor practices, so there should be no confusion regarding the underlying events. [Citation.]"

Finally, the court found sufficient evidence that the Board had authorized the filing of the enforcement action in the OGC's representations that it had sought and obtained such authorization.

The court issued a peremptory writ of mandate directing appellant to "1. Comply with the Board's order in . . . PERB Decision No. 2385, and [¶] 2. Comply with the Board's order in . . . PERB Decision No. 2455," and to file a return to the writ within 30 days, setting forth all measures taken to comply with it. This appeal followed.

## DISCUSSION

A. *Standard of Review*

A writ of mandate lies under Code of Civil Procedure section 1085 "'to compel the performance of a legal duty

19

imposed on a government official'" or "a public body."
(*James v. State of California* (2014) 229 Cal.App.4th 130,
136; accord, *Hayes v. Temecula Valley Unified School Dist.*
(2018) 21 Cal.App.5th 735, 746 (*Hayes*).)  "To obtain relief
under Code of Civil Procedure section 1085, '"the petitioner
must show there is no other plain, speedy, and adequate
remedy; the respondent has a clear, present, and ministerial
duty to act in a particular way; and the petitioner has a
clear, present and beneficial right to performance of that
duty.  [Citation.]  A ministerial duty is one that is required
to be performed in a prescribed manner under the mandate
of legal authority without the exercise of discretion or
judgment."'  [Citation.]"  (*Hayes*, *supra*, at p. 746.)

"In reviewing a judgment granting or denying a writ of
mandate petition, '"we apply the substantial evidence
standard of review to the court's factual findings . . . .""'
(*Hayes*, *supra*, 21 Cal.App.5th at p. 746.)  Factual findings
are examined for substantial evidence and any conflicts in
the evidence are resolved in favor of the prevailing party.
(*Ibid.*)  However, "[o]n questions of law, including statutory
interpretation, the appellate court applies a de novo review
and makes its own independent determination."  (*Ibid.*)

More fundamentally, we apply the rule that "an
appealed judgment or order is presumed to be correct" and
"error must be affirmatively shown."  (Eisenberg et al., Cal.
Practice Guide:  Civil Appeals and Writs (The Rutter Group
2017) ¶ 8:15, p. 8-5, italics omitted.)  In addition,
"'[a]ppellate briefs must provide argument and legal

authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.'" [Citation.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Ibid.*)

B. *The Board's Compliance with Procedural Requirements*

Section 3542, subdivision (d), permits the Board to seek enforcement of any final decision or order in superior court. The court must issue a writ of mandamus if, after a hearing, it determines that "the order was issued pursuant to procedures established by the board and that the person or entity refused to comply with the order." Section 3542, subdivision (d), specifically prohibits the court from "review[ing] the merits of the order." Appellant contends PERB failed to prove that its "complex and extensive" procedures were followed. The trial court found otherwise. Substantial evidence supports the trial court's finding.

Preliminarily, we observe that section 3542, subdivision (d), instructs PERB to submit two things to the court to establish entitlement to the requested writ of mandate: "the record of the proceeding" and "appropriate evidence disclosing the failure to comply with the decision or

21

order."  This suggests that the Legislature intended section 3542, subdivision (d) enforcement hearings to be relatively streamlined, not requiring the parties to rehash arguments concerning procedural irregularities that were or should have been made to the Board when the complaints were filed and the hearings conducted.  This was the conclusion in *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1985) 192 Cal.App.3d 1530, judgment affirmed and ordered published (1987) 43 Cal.3d 696 (*Tex-Cal I*), where the Court of Appeal considered the similar language of Government Code section 1160.8.[10]  The issue was whether writs and orders issued under section 1160.8 were appealable.  (*Tex-Cal I, supra,* at p. 1535.)  Acknowledging "the desirability of prompt enforcement of final [Agricultural Labor Relations Board] orders in labor disputes," the court nonetheless held that orders issued under section 1160.8 were appealable.  (*Tex-Cal I, supra,* at pp. 1537, 1538.)  The court went on to state, however:  "As we view it, most appeals of such judgments will be frivolous in nature.  Only two findings are required by the superior

---

[10]    Labor Code section 1160.8 permits the Agricultural Labor Relations Board to "apply to the superior court in any county in which the unfair labor practice occurred" for enforcement of its orders, and requires the court to enforce such orders "by writ of injunction or other proper process" if it determines that "the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order . . . ."

court as a condition to the issuance of the 'writ of injunction or other proper process' enforcing the order.  These are (1) the procedural regularity of the order and (2) the refusal of the party subject to the order to comply therewith. . . .  By the time the enforcement judgment is entered in the typical case, any serious question of procedural regularity will have long since been corrected or waived by a failure to object to the irregularity in a petition for review in the Court of Appeal.  The question of refusal to comply with the Board order is a fact question for the superior court which seldom will be overturned on appeal.  Normally, Board declarations of noncompliance and notice will be sufficient evidence to support a 'refusal' finding in this context.  Thus, it is difficult to imagine a case where an appeal from the judgment will be filed for any purpose other than to delay the enforcement of the judgment."  (*Id.* at p. 1538.)[11]

---

[11]     In *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696 (*Tex-Cal II*), the Supreme Court affirmed the holding that section 3542, subdivision (d) enforcement actions were appealable, and echoed the Court of Appeal's sentiments:  it "sympathize[d] with the Board's desire for prompt enforcement of its final order once the order is beyond review on the merits," "recognize[d] the potential for delay in frivolous appeals from superior court enforcement judgments," and agreed that "the issues on appeal from a superior court enforcement judgment will be limited.  Procedural regularity and refusal to comply are the only points which can be raised."  (*Tex-Cal II, supra,* at pp. 705-706.)  The Supreme Court took the unusual step of ordering the Court of Appeal decision published notwithstanding its review because "significant Court of Appeal
(*Fn. is continued on the next page*.)

23

The current appeal falls into the category the court in *Tex-Cal I* warned against: filed for no discernible purpose other than to delay the enforcement of the judgment. Appellant raised no issues of procedural irregularity in its appearances before the Board, in its post-hearing briefs or in the petitions seeking review of Decision No. 2385, and offers no excuse for its failure to do so. Hence, any objections to procedural deficiencies that preceded the issuance of the final PERB decisions and orders were "long since . . . waived" (*Tex-Cal I, supra,* 192 Cal.App.3d at p. 1538), and the sole issue before the court was whether the decisions and orders themselves were issued and served in accordance with established procedures. The trial court conducted a meticulous review of the administrative record, and found that PERB had established its compliance with all pertinent regulations from the dates the CSEA charges were filed until the final decisions and orders were issued. The record amply supports that conclusion.

In the underlying proceeding, PERB provided the complete administrative record from which its compliance with its procedures prior to issuing the two orders could be easily established. Moreover, as it does in its brief on appeal, it also summarized in detail the factual and

opinions should be available as citable precedent with respect to issues not reached by us on subsequent review," and the appellate court's opinion was "beneficial and worthy of publication in that regard . . . ." (*Id.* at 709, fn. 12.)

24

procedural history of the two CSEA matters, resolving any potential doubt.  The record shows that after CSEA filed the unfair practice charges, PERB assigned them to the OGC for investigation and review.  The attorneys to whom they were assigned notified appellant and gave it an opportunity to respond.  (See CCR, title 8, § 32620 [Processing of Case].)  Settlement conferences were held.  (See *id.*, § 32650 [Informal Conference].)  After determining that the charges had merit, PERB filed and served a complaint.  (See *id.*, §§ 32140 [Service], 32640 [Issuance of Complaint].)  Noticed hearings were held before PERB ALJ's.  (See *id.*, §§ 32168 [Conduct of Hearing], 32170 [Powers and Duties of Board Agent Conducting a Hearing].)  The parties appeared and were given an opportunity to present evidence.  (See *id.*, § 32180 [Rights of Parties].)  After the conclusion of the hearings, the parties were given an opportunity to file, and did file, post-hearing briefs.  (See *id.*, § 32212 [Briefs and Oral Argument].)  The ALJs' issued proposed decisions.  (See *id.*, § 32215 [Proposed Decision].)  One or both of the parties filed exceptions, requiring the Board to review the proposed decisions.  (See *id.*, § 32300 [Exceptions to Board Agent Decision].)  The Board issued and served decisions and orders affirming the ALJ's proposed decisions.  (See *id.*, § 32320 [Decision of the Board Itself].)

Both below and on appeal, appellant contended that PERB regulations are complex and cited a number of the regulations, but made no attempt to demonstrate that any relevant regulation had been overlooked or disregarded.  For

25

example, appellant cited CCR, title 8, section 32620, which requires charges to be "assigned to a Board agent for processing" and describes the duties of the Board agent, including assisting the charging party to state the charge in proper form, advising the charging party of any deficiencies in the charges in a warning letter, answering the procedural questions of both parties, facilitating communications and the exchange of information between the parties, and dismissing any charge where the evidence is insufficient. Neither below nor on appeal, however, has appellant suggested -- much less demonstrated --  that any part of the regulation was violated.  And neither below nor on appeal has appellant identified any relevant regulation that was not followed.[12]

In sum, as the evidence was undisputed that PERB followed its procedures prior to issuing the subject decisions

---

[12]   Appellant also cited, and continues to cite, patently irrelevant regulations:  CCR, title 8, sections 32621 governing amendment of charges, 32625 governing withdrawal of charges and 32649 governing answers to amended charges.  Clearly, these regulations have no applicability where CSEA neither amended nor withdrew any unfair practice charges.  Appellant provides no explanation for its citation to inapplicable PERB regulations; to the extent it suggests that meeting the burden of proof in an enforcement action requires PERB to place a copy of its regulations into the record and go through each of them, line by line, explaining to the trial court exactly how it was followed or why it was irrelevant, we decline to ascribe such an absurd meaning to section 3542, subdivision (d)'s requirements.

and orders, the trial court's finding was necessarily supported by substantial evidence. To the extent appellant suggests that section 3542, subdivision (d), requires a more rigorous inquiry than that conducted by the trial court, we disagree. To the extent appellant suggests that procedural irregularities occurred, its failure to support the argument with citations to specific examples and reasoned argument constitutes a waiver of any such contention.

C. *OGC's Responsibilities Under CCR, Title 8, Section 32980*

CCR, title 8, section 32980 gives the General Counsel responsibility for determining whether the parties have complied with final Board orders. As discussed, it permits the General Counsel or his or her designate to "conduct an inquiry, informal conference, investigation, or hearing as appropriate, concerning any compliance matter." Appellant contends the General Counsel abused his discretion in refusing to negotiate over the wording of the notices or to allow appellant to post modified notices.

Initially, we observe that to the extent appellant contends the General Counsel's post-decision actions can be raised as a defense to an enforcement action, its position is contrary to the statute. Section 3542, subdivision (d), specifically permits the trial court to consider only two factors: whether the order was issued pursuant to the procedures established by the Board, and whether the respondent refused to comply with the order. (See *Tex-Cal I*,

27

*supra*, 192 Cal.App.3d at p. 1358; *Tex-Cal II*, *supra*, 43 Cal.3d at p. 706.) In any event, the record disclosed no abuse of discretion by the General Counsel. As the trial court noted, the OGC conducted an inquiry and investigation into appellant's compliance. It did so under a regulation that was expressly permissive: "The General Counsel . . . *may* conduct an inquiry, informal conference, investigation, or hearing, *as appropriate*, concerning any compliance matter." (CCR, tit. 8, § 32980, italics added.) As the General Counsel correctly advised appellant, nothing in the regulation authorized him to modify a Board order.

Nor did appellant provide a justification for modification of the orders by anyone. With respect to the Notice to Employees in Decision No. 2385, appellant contends that "[a] very significant event had occurred" since its issuance: CSEA had withdrawn its request to bargain, rendering the language of the notice "no longer relevant" and "moot." In fact, this event was anticipated by the parties and the Board, and the decision expressly dealt with what would happen if CSEA failed to initiate a "meet and negotiate" session: the limited backpay remedy would not go into effect. Appellant had an opportunity, prior to the issuance of the decision and order, to propose a modified notice if the meet and negotiate did not take place and appellant believed its nonoccurrence would render any language of the notice misleading. It neither did so nor sought review on any ground related to the wording of the notice.

28

With respect to the Notice to Employees required by Decision No. 2455, appellant simply attempts to relitigate the merits of the decision. Despite appellant's contention that "there was never any change to the payment of holiday pay policy in the District and the one employee who was entitled to holiday pay has been paid" both the ALJ and the Board found there had been a change. (Underscoring omitted.) Appellant had the opportunity to seek review of that decision, but declined to do so. Appellant also failed to place evidence before the Board concerning the number of employees affected. Accordingly, the Board found CSEA's allegations true, and ordered appellant to pay all affected employees and provide CSEA the information needed to establish which employees were affected. The Notice to Employees demanded by Order No. 2455 requires appellant to inform employees that it will rescind the holiday pay policy change, make whole all affected employees, and provide CSEA the information it needs to protect those it represents. Appellant remains under that obligation.

Moreover, as PERB has frequently explained, the point of the posting requirement is not only to ensure that affected employees are aware of past violations, but also to ensure that all employees are aware of their rights under the EERA and to influence those who have the authority to prevent violations from reoccurring. (See *City of Sacramento* (2013) PERB Dec. No. 2351-M [2013 Cal. PERB LEXIS 44] at pp. *74-*75 ["The Board's authority to inform employees of their rights, and its discretion to determine the

29

circumstances and methods for accomplishing this task, are both well-settled.  [Citation.]  Since the earliest days of this agency, PERB remedial orders have required offending parties to post notice of their unlawful conduct to ensure that all employees affected by the Board' s decision and order are notified of their rights.  [Citation.] . . . [¶] We believe that physically posting notice of the Board's remedial orders in the workplace remains an essential tool of remedying unfair practices and further the polices of the statutes we administer."]; *Trustees of the California State University, supra,* PERB Dec. No. HO-U-335-H at [1988 Cal. PERB LEXIS 49] at p. *1 ["The purpose of a posting requirement is to inform all who would naturally be concerned (i.e., employees of the District, as well as management and supervisory personnel who carry out District policies) of activity found to be unlawful under the Act in order to provide guidance and prevent a reoccurrence. The furtherance of the central purpose of the EERA, harmonious labor relations, depends upon awareness of what the statute demands of all parties . . . [and] the purposes of that Act are best effectuated by districtwide posting."]; *Belridge School District* (1980) PERB Dec. No. 157 [1980 Cal. PERB LEXIS 24] at p. *13 ["The District argues that posting should not be ordered in this case because of the length of time that has passed since the conduct found to be an unfair practice occurred.  It contends that posting would only disrupt the atmosphere that now exists in the District. The Board acknowledges these concerns, but nevertheless

finds that posting is an appropriate remedy here. Posting ensures that employees affected by this decision are informed of their rights under the EERA. The fact that the case has been delayed does not lessen the importance of that remedy as a means of effectuating policies of the EERA."].) Regardless of whether appellant is required to provide additional restitution or backpay, the notices will be helpful to employees who may have information pertinent to new violations of their rights under the EERA under similar circumstances, and should serve as reminders to those in authority to avoid unilateral action that violates the EERA.

## DISPOSITION

The order granting the petition for writ of mandate is affirmed.  Respondent and real party are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.

MICON, J.*

_____

*Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.