Filed 7/6/23   P. v. Washington CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH WASHINGTON,<br><br>        Defendant and Appellant. | A166126<br><br><br>(Alameda County Super. Ct. No. H53084A) |

Isaiah Washington was 21 years old when he murdered two people while robbing them and attempted to murder a third.  In 2015 he was convicted and sentenced to life in prison without the possibility of parole.  Seven years later he filed a postjudgment motion in the trial court, requesting a hearing to develop a record of mitigating circumstances for an eventual youthful offender parole hearing pursuant to Penal Code, section 3051.[1]  (See *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).)  This appeal is from the court's denial of that motion.

Washington acknowledges his life without parole sentence renders him statutorily ineligible for the youthful offender parole program (§ 3051, subd. (h)), but contends this exclusion violates his constitutional equal protection rights and prohibitions against cruel and unusual punishment. We reject the former

---

[1] Undesignated statutory citations are to the Penal Code.

1

claim for the reasons we articulated in *People v. Sands* (2021) 70 Cal.App.5th 193 (*Sands*) and deem the latter forfeited and meritless.

## BACKGROUND

### A.

The Legislature enacted section 3051 to bring juvenile sentencing into conformity with recent United States and California Supreme Court cases addressing Eighth Amendment limits on juvenile sentencing. (*Franklin, supra,* 63 Cal.4th at p. 277; *Sands, supra,* 70 Cal.App.5th at pp. 197-198.) With certain exceptions, persons convicted of an offense committed when they were 25 or younger "shall be eligible for release on parole at a youth offender parole hearing" during their 15th, 20th, or 25th year of incarceration, depending on the sentence originally imposed. (§ 3051, subds. (b)(1)-(3).) Eligible offenders are also entitled to a hearing (known as a *Franklin* hearing) to make an accurate record of their characteristics and circumstances at the time of the offense, so that, years later, the Board of Parole Hearings may properly discharge its obligation to " 'give great weight' " to the offender's youth-related factors at the youth offender parole hearing. (*Franklin, supra,* at p. 284.)

Several categories of juvenile and young adult offenders are statutorily excluded from eligibility for youth offender parole. Among them are offenders who, like Washington, were sentenced to life without the possibility of parole for an offense committed when they were 18 or older. (§ 3051, subd. (h); *Sands, supra,* 70 Cal.App.5th at p. 199.)

### B.

In 2015, a jury convicted Washington of (1) two murders with the use of a firearm, with the special circumstances that he killed the victims during the commission of a robbery and committed more than one murder; (2) attempted murder with the

2

use of a firearm; and (3) being a felon in possession of a firearm. The trial court imposed two consecutive terms of life without the possibility of parole, plus concurrent terms for attempted murder and illegal firearm possession. We affirmed the conviction in an unpublished opinion. (*People v. Washington* (June 12, 2018, A146433) [nonpub. opn.].)

In 2022, Washington moved for a *Franklin* hearing. He argued the exclusion of 18-to-25-year-olds from eligibility for youth offender parole violated his constitutional equal protection rights and prohibitions against cruel or unusual punishment. The court rejected both claims and denied the motion.

## DISCUSSION

### A.

In *Sands, supra,* 70 Cal.App.5th 193, we rejected the contention Washington makes here. At issue are two different classes of offenders who were in the same age group when they committed their crimes (18 to 25 years old)—one group consists of offenders who have been sentenced to life without parole, and the second group consists of offenders who, having committed different crimes, received sentences by which they are technically eligible for parole but will not live long enough to actually become eligible (sometimes called "de facto life without parole"). (See *id.* at p. 203.) In *Sands*, we determined that the Legislature may, consistent with equal protection principles, make the latter group eligible for a youth offender parole hearing while excluding the former group.

We observed the requirement of equal protection ensures the government does not treat groups of people unequally without justification. (*Sands, supra,* 70 Cal.App.5th at p. 202.) To that end, courts must consider whether the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. If it has, and no suspect class or

3

fundamental rights are at issue, we ask whether there is any conceivable rational basis for the disparate treatment. (*Id.* at pp. 202, 204.)

In *Sands*, we assumed for purposes of argument that young adult offenders sentenced to life without parole are similarly situated to young adult offenders sentenced to de facto life without parole. (*Sands, supra,* 70 Cal.App.5th at p. 203.) We concluded, as have other courts, that the Legislature may rationally treat the latter group less harshly because it deems their crimes less severe than special circumstance murders punishable by life without parole. (*Id.* at p. 204; see *People v. Morales* (2021) 67 Cal.App.5th 326, 348-349 ; *People v. Jackson* (2021) 61 Cal.App.5th 189, 200 (*Jackson*); *People v. Acosta* (2021) 60 Cal.App.5th 769, 780 (*Acosta*); *In re Williams* (2020) 57 Cal.App.5th 427, 436 (*Williams*).) As we explained, offenses punishable by life without parole " 'are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society.' " (*Sands, supra,* at p. 204, quoting *Williams, supra,* at pp. 436, 460-461 [special circumstances multiple murder warrants penalty reserved for the most heinous crimes].)

We also rejected the claim Washington makes here that the distinction lacks a rational basis simply because some offenders sentenced to de facto life without parole terms may arguably be equally or more culpable than some offenders sentenced to life without parole. (*Sands, supra,* 70 Cal.App.5th at pp. 204-205.) "A legislative classification does not fail rational basis review because it is ' "imperfect" ' or ' "because it may be 'to some extent both underinclusive and overinclusive.' " ' " (*Id.* at p. 205.)

Washington urges us to instead follow *People v. Hardin* (2022) 84 Cal.App.5th 273, 278, 286-291 (*Hardin*), review granted Jan. 11, 2023, S277487, which reached the opposite conclusion.

The defendant, a youthful offender sentenced to life without parole, raised the equal protection claim Washington advances here. (*Id.* at pp. 280, 284.) The *Hardin* court agreed, reasoning that section 3051 is "decidedly not a sentencing statute." (*Id.* at p. 287.) In its view, the Legislature's sole purpose in enacting the statute's current iteration was to account for juvenile and youthful offenders' potential for rehabilitation after gaining maturity, "not to assess culpability." (*Ibid.*; see also *id.* at pp. 279, 288.) But even assuming culpability did have some "proper" role in the statute, the court found it bore no rational relationship to the exclusion of youthful offenders sentenced to life without parole because the statute did not also exclude youthful offenders sentenced to functionally equivalent terms. (*Id.* at pp. 289-290.)

As noted above, the Supreme Court has granted review of *Hardin.* We are not persuaded to depart from *Sands* pending the Court's decision. First, we question *Hardin*'s characterization of section 3051. As we said in *Sands,* while it may not be " 'a sentencing statute per se, it nevertheless impacts the length of sentence served.' " (*Sands, supra,* 70 Cal.App.5th at p. 205; see also *People v. Ngo* (2023) 89 Cal.App.5th 116, 125, review granted May 17, 2023, S279458.) Moreover, under this scheme, an offender's eligibility for parole varies commensurately with the length of the originally imposed sentence and, therefore, reflects (albeit roughly) the culpability assessed at sentencing. (§ 3051, subds. (b)(1)-(3).)

More fundamentally, the Legislature's classifications are presumed rational; the challenger has the burden of showing they lack any conceivable rational basis. (*Sands, supra,* 70 Cal.App.5th at p. 204.) In considering an equal protection challenge, we must accept any plausible rational basis without questioning its wisdom, logic, persuasiveness, or fairness, and regardless of whether the Legislature articulated it. (*Ibid.*) Applying these principles, our analysis in *Sands* followed a well-

5

trodden path to conclude the Legislature may rationally punish youthful offenders sentenced to life without parole more severely than those sentenced even to de facto life sentences. (*Ibid.*; see *People v. Morales, supra,* 67 Cal.App.5th at pp. 348-349 ; *Jackson, supra,* 61 Cal.App.5th at p. 200; *Acosta, supra,* 60 Cal.App.5th at pp. 780-781; *Williams, supra,* 57 Cal.App.5th at p. 436.) Simply put, the Legislature has broad discretion to define degrees of culpability and punishment and to distinguish between crimes in this regard. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) It did not abuse that discretion in denying eligibility for youthful parole hearings for offenders who commit the most morally depraved and injurious murders while extending it to those convicted of murders it deems to be less grave. (*Jackson, supra,* at p. 200; *Williams, supra,* at p. 436.)

## B.

Washington next contends excluding him from section 3051's youth parole hearing provisions violates constitutional protections against cruel and unusual punishment. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) As we understand the argument, he maintains his sentence is unconstitutionally disproportionate to his culpability and rehabilitative potential because the sentencing court did not consider the mitigating qualities of youth that must be taken into account in sentencing *juvenile* murderers. (*See Miller v. Alabama* (2012) 567 U.S. 460, 477-481, 489 [sentencing court must consider juvenile offender's youth and its attendant characteristics before imposing life without parole].)

Washington forfeited this claim by failing, as far as we can discern from his briefs and the record provided to us, to raise it at sentencing—which, we observe, occurred several years after the Supreme Court issued *Miller v. Alabama, supra,* 567 U.S. 460. (See *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247 [failure to contemporaneously object sentence constituted cruel or

unusual punishment forfeits claim on appeal].)  In moving for a *Franklin* hearing, Washington identified as relevant factors his lack of cognitive development; abandonment issues; the imprisonment of two family members; codependency issues; and abuse.  Such fact-specific challenges to sentencing decisions must be raised at the sentencing hearing, where the trial court may consider them in exercising its sentencing discretion.  (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.)

In any event, we agree with other courts that have rejected the contention.  (*Acosta, supra,* 60 Cal.App.5th at p. 782; *Williams, supra,* 57 Cal.App.5th at pp. 437-439.) The Eighth Amendment prohibits only sentences that are grossly disproportionate to an individual's crime.  (*Ewing v. California* (2003) 538 U.S. 11, 21 (*Ewing*); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1096.)  This limitation "will rarely apply to those serious offenses and offenders currently subject by statute to life-maximum imprisonment." (*In re Dannenberg, supra*, at p. 1071; see also *Ewing, supra,* at p. 21 [" '[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare' "].)  It does not apply here.  Even assuming Washington's age when he robbed and murdered two people to some extent diminished his culpability, his sentence is not "grossly disproportionate" to those egregious crimes.  (See *Williams, supra,* at pp. 438-439.)

Finally, Washington asserts without cogent legal argument or authority that imposing mandatory life without parole sentences on African Americans is unconstitutionally disproportionate "under the Racial Justice Act" (see § 745) in light of a legislative committee report that 79 percent of those serving life without parole sentences are people of color and 38 percent are Black youths under age 26.  It is not this court's role to construct a legal theory linking these statistics to an Eighth Amendment violation.  (*People v. Stanley* (1995) 10 Cal.4th 764,

793; *Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939.)  This contention, too, is forfeited.

## DISPOSITION

The order is affirmed.

_____
BURNS, J.

We concur:

_____
SIMONS, ACTING P.J.

_____
CHOU, J.

A166126