Filed 5/7/25  Marriage of E.M. and W.A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of E.M. and W.A. | |
| E.M., | G062932, G063608 |
| Respondent, | (Super. Ct. No. 20D003889) |
| v. | O P I N I O N |
| W.A., | |
| Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Carmen R. Luege, Judge. Reversed and remanded in part, and affirmed in part. Request for Judicial Notice. Denied.

Jennifer S.F. Lim for Appellant.

E.M., in pro. per., for Respondent.

Appellant W.A. (Husband) and respondent E.M. (Wife) were married for approximately three years. During their marriage, they purchased a home (the Anaheim property), which ultimately became the focus of considerable dissension in their divorce proceeding. The family court conducted a 10-hour trial to address a series of claims—some by Husband and some by Wife—for a variety of reimbursements, credits or other payments, many of which related in some manner to the Anaheim property. In its findings and orders after trial, the court found Husband lacked credibility and had committed a fraud on the court, and it ruled against Husband in most respects. It then denied Husband's motion for a new trial and entered a final judgment that incorporated its findings and orders after trial. Husband appeals both the denial of his new trial motion and the final judgment.

We find no error in the denial of Husband's motion for new trial. As to the judgment, we conclude Husband established his right to reimbursement of the $28,000 downpayment on the Anaheim property and therefore reverse that part of the judgment and remand. In all other respects, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

Husband and Wife married on July 30, 2017, and separated on June 11, 2020. The parties had no minor children. Wife filed a petition for dissolution of marriage on June 29, 2020, and obtained a domestic violence restraining order (DVRO) against Husband on October 6, 2020. The family court bifurcated the issue of status from the issues of property division and entered judgment regarding status on September 8, 2021.

The bifurcated court trial on the property issues consumed 10 hours and took place over two days on August 22 and 23, 2022. At the close of

evidence, the court ordered the Anaheim property to be sold.

On November 16, 2022, the court issued its findings and order after trial. The court rejected most of Husband's claims based on lack of credibility. Specifically, the court found as follows:

"[T]he record supports the Court's finding that [Husband] provided the Court false and misleading information about his financial condition which significantly impacts the Court's ability to accept any part of [his] testimony as credible. [¶] There are many examples of [Husband's] untruthful trial testimony. Here are some of the most memorable ones: [Husband] testified that his doctor placed him on disability, and he has not worked since January 2022. In his most recent I&E (filed 8/8/2022) [Husband] reported disability payments in the sum of approximately $4,200. [Husband] did not provide any evidence of a medical diagnosis in support of the disability. Instead, he explained that he could not sit or stand for long periods due to pain making him unable to work. Yet when confronted with photos from social media, [Husband] admitted that in 2022 he has been traveling all over the world: Las Vegas, Cabo San Lucas, Cancun, New York, Chicago, Paris, Germany, Amsterdam, Egypt, Turkey, and Dubai and that these trips had been for pleasure. Some of these locations required extensive travel time on airplanes—a challenging environment for a person who cannot sit for very long. The travel photos showed [Husband] jumping high off the ground, sitting on an ATV with goggles off-roading, and riding a camel. (Ex. 70.) Notably, [Husband] did not explain how he could afford to be travelling all over the world while his only source of income were [*sic*] state disability payments. [Husband] also provided inconsistent and inaccurate testimony regarding his employment with [F.S., his employer]. [Husband] testified that he worked for [F.S.] for only one month, yet Ex. 24 shows that [Husband]

3

applied for a loan with [a lender] in which he represented that he worked at [F.S.] from May 14, 2021, through September 17, 2021, and that he earned [money] during that time period. In that loan application [Husband] showed income [well in excess of what he has been representing to the Court]. (I&E filed 1/22/21 and 8/8/22)."

The family court further found Husband's decision to proceed to trial based on fraudulent disability allegations in order to meet the Family Code section 2030 criteria for need-based attorney fees "appalling" and "a fraud on the Court." The court disbelieved Husband's testimony in multiple other respects and found many of his claims to be uncorroborated, all of which was detailed in its findings and orders after trial. The court also rejected the testimony of Husband's expert witness to the extent the expert had relied on uncorroborated assumptions obtained from Husband. The court's findings that Husband lacked credibility permeated its conclusions.

In sum, the family court (1) denied Husband's claims for reimbursement of the closing costs and downpayment for the purchase of the Anaheim property, (2) denied Husband's claim for reimbursement of cash he contends he spent renovating the Anaheim property, (3) approved a portion of Husband's claim for money he spent using his separate property to buy items used to improve the Anaheim property, (4) denied Husband's claim for costs to repair damage to the Anaheim property allegedly caused by Wife, (5) approved Husband's claim for 50 percent of a charge for plumbing repairs, (6) approved Wife's claim for half of certain insurance proceeds, (7) denied Husband's claim under *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 for Wife's use of the Anaheim property following their separation (*Watts* charges), and (8) approved Husband's claim for credits pursuant to *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein* credits) only as to certain

4

utility payments he made postseparation.

The family court found Husband had breached his fiduciary duties as to Wife by acting in bad faith as to his claim of disability, by his handling of the insurance checks, and by the position he took in the litigation regarding the cash wedding gifts received by the parties. The court awarded $20,000 in attorney fees to Wife as a sanction pursuant to Family Code section 271, plus an additional $6,000 in attorney fees as the prevailing party in the DVRO proceedings.

Husband moved for a new trial. Although Wife did not file an opposition, the court denied the motion. Husband filed a notice of appeal from that order. Judgment was entered on November 9, 2023, and the clerk issued notice of entry of judgment on November 14, 2023. Husband timely appealed from the judgment. We ordered the two appeals consolidated.

## DISCUSSION

Husband appeals from the family court's order denying his motion for new trial and from the final judgment of dissolution entered on November 9, 2023. A final judgment of dissolution is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) The order denying the motion for new trial is reviewable in connection with an appeal taken from the final judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.)

### I.

### MOTION FOR NEW TRIAL

We review the order denying Husband's motion for new trial for abuse of discretion (*Ajaxo Inc. v. E*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 46) but make an "independent determination" based on "the entire record,

including the evidence" as to whether the asserted error was prejudicial (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872).

Husband's motion for new trial was brought pursuant to Code of Civil Procedure section 657 and was based on his contention that he was prevented from proving his claim of disability and rehabilitating his credibility. Husband contends he could not have reasonably anticipated the court would require additional proof of his disability and, because the court limited trial to 10 hours, he was not given adequate opportunity at trial to address the court's adverse conclusions about his disability.

The family court denied Husband's motion for new trial on the ground it failed to show "irregularity in the proceedings, accident/surprise, newly discovered evidence, insufficiency of evidence, or error of law." Specifically, the court stated: "[Husband's] trial testimony was untruthful on a variety of significant issues which resulted in the Court's ruling explained in detail in the Court's Findings and Orders. [Husband] is not entitled to a new trial to modify untruthful testimony provided at his original trial. A motion for new trial cannot be based on challenging the court's credibility determinations."

Having independently reviewed the entire record of the trial proceedings, we find no abuse of discretion in the trial court's denial of Husband's motion for new trial.

Where a new trial motion is based on surprise, the moving party must show three things: (1) something unforeseen happened during trial; (2) the accident or surprise had a material adverse effect on the moving party's case; and (3) the accident or surprise could not have been guarded against or prevented through reasonable diligence by the moving party. (*Kauffman v. De Mutiis* (1948) 31 Cal.2d 429, 432.) This ground for a new trial is viewed

6

with skepticism and is seldom successful because the moving party must show injury, diligence, and no undue delay in seeking redress. (*Fletcher v. Pierceall* (1956) 146 Cal.App.2d 859, 866.) At a minimum, Husband failed to demonstrate he acted with diligence. Having sought need-based attorney fees based on his claimed disability and inability to work, reasonable diligence would require Husband (and his counsel) to be prepared to prove he was precluded from working because of a disability and to anticipate the impeachment evidence regarding his world travels and attacks on his credibility.

For the same reason, we reject Husband's contentions that the family court did not have "jurisdiction" to reject his claim of disability and that its finding of fraud "may be foreclosed by collateral estoppel principles." Husband put his disability squarely at issue by requesting an award of attorney fees based on need due to his inability to work. He cannot credibly contend the court had no jurisdiction to consider the truthfulness of his asserted need. Moreover, Husband failed to cite any legal authority for his argument on appeal that the court was required by collateral estoppel principles to uncritically accept his claim of disability, thereby forfeiting the argument. On appeal, ""the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]" [Citations.] When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived."" (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; see also *Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939 [""[w]e are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the

contention as waived"""]; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[w]hen legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

Husband also failed to show the court's imposition of time limits at trial prevented him from proving his disability. The court has discretion to impose reasonable time limits during trial (*People v. Marshall* (1996) 13 Cal.4th 799, 854–855), and we review the time limits imposed for abuse of discretion (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 148). Our review of the record reveals no abuse of discretion. Husband was given ample opportunity to support his claim that he was unable to work due to a disability and entitled to need-based attorney fees.

Finally, even assuming for the sake of argument the family court should have given Husband more time to present evidence to address the court's concerns regarding his purported inability to work, Husband failed to show prejudicial error. Wife's attorney presented photographic evidence of Husband's world travels and vigorous physical activities during the time period he claimed he was disabled, which undermined the veracity of Husband's disability claim. Even with additional time at trial, there is no reasonable likelihood Husband would have been able to overcome that damning evidence.[1] (See *Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869, 875 [prejudicial error is the basis for a new trial].)

Finally, Husband's reliance on *Barboni v. Tuomi* (2012) 210 Cal.App.4th 340 to support his argument that the family court could consider

---

[1] Husband also withdrew his claim for need-based attorney fees, making the issue of his claimed disability (and his argument he did not have a fair opportunity to support his claim) moot.

declarations to which Wife failed to object in connection with his motion for new trial is misplaced. *Barboni v. Tuomi* involved allegations of juror misconduct, and the declarations in that case were from jurors. (*Id.* at p. 349.)

We address below, and reject, Husband's arguments that his motion for new trial should have been granted on the grounds that (1) the evidence was insufficient to support the award to Wife of half of the insurance proceeds, and (2) the attorney fees awarded to Wife were excessive.

## II.

### THE JUDGMENT

*A.  Governing Principles and Standard of Review*

"On appeal, the appellant bears the burden of establishing error." (*Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 16.) "All issues of credibility are for the trier of fact, and all conflicts in the evidence must be resolved in support of the judgment. [Citation.] The trial court's judgment is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.)

In marital dissolution proceedings, the family court has broad discretion to resolve reimbursement claims, and we review its decision under the abuse of discretion standard. (See *In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1124–1125.) To the extent the trial court's exercise of that discretion is based on factual determinations, we must uphold the court's decision if it is supported by substantial evidence. (*In re Marriage of Nichols, supra,* 27 Cal.App.4th at p. 670.) To determine whether substantial evidence supports the court's factual findings, we review the evidence in the light most favorable to Wife, the prevailing party. (*Casey N. v. County of Orange* (2022)

9

86 Cal.App.5th 1158, 1170.) "We do not reweigh evidence or reassess the credibility of witnesses." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.)

*B.  Husband's Reimbursement Claims Under Section 2640*

Family Code section 2640 provides for limited reimbursement of separate property contributions as part of the division of the community estate under the Family Code.[2] Contributions to the acquisition of community property are reimbursed to the extent a party is able to trace the contributions to a separate property source, and reimbursement is statutorily mandated unless the party who made the contribution has made a "written waiver of the right to reimbursement." (*Id.*, subd. (b).) "'Contributions to the acquisition of property'" include "downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property." (§ 2640, subd. (a).)

Tracing funds to a separate property source is sufficient to establish a prima facie statutory right of reimbursement (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1056), and the amount of reimbursement is the value of the separate property contributions at the time they were made (§ 2640, subd. (b); *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 924). "Whether the spouse claiming a separate property interest has adequately met his or her burden of tracing to a separate property source is a question of fact and the trial court's holding on the matter must be

---

[2] All further undesignated statutory references are to the Family Code.

upheld if supported by substantial evidence." (*In re Marriage of Cochran, supra,* 87 Cal.App.4th at pp. 1057–1058.)

### 1. Downpayment and Closing Costs for the Anaheim Property

At trial, the parties stipulated the Anaheim property was community property. Husband had money in a bank account in his name at the time of marriage that was his separate property. The evidence at trial was undisputed that Husband wired from that account a total of $43,263.06 to escrow in connection with the purchase of the Anaheim property. It also was undisputed that, of that amount, $28,000 was for the downpayment and the remaining $15,263.06 was for closing costs.

Although the trial court acknowledged the funds paid into escrow were traced to Husband's separate property bank account, it nonetheless rejected Husband's reimbursement claim on the basis it found him not credible, concluding "the source of the down payment for the Anaheim Property were joint wedding gifts of cash in the sum of approximately $32,000" and that "[t]he parties agreed that the funds would be use[d] as down payment in the purchase of a family residence, and Respondent was always in possession and control of those funds." As a result of its credibility determinations, the court concluded, "Respondent did not use his separate funds to pay the down payment."

Without second-guessing the family court's finding that Husband lacked credibility, the record compels us to conclude substantial evidence does not support the family court's finding that the down payment was made using cash gifts given to the couple on their wedding day. The uncontroverted evidence showed escrow was paid directly from Husband's bank account, which contained money that was entirely Husband's separate property. Significantly, uncontroverted evidence also showed no money was deposited

11

into that account at any time after the wedding and before the downpayment was made. Absent evidence of a written waiver, Husband was statutorily entitled to reimbursement under section 2640. (*In re Marriage of Witt* (1987) 197 Cal.App.3d 103, 108 [the statute "creates a substantive right of reimbursement in the contributing spouse which can be relinquished only by an express written waiver"].) There was no evidence at trial of a written waiver by Husband of the right to reimbursement, and no evidence Husband made the downpayment as a gift to the community.

The family court improperly conflated Husband's statutory entitlement to reimbursement for the downpayment and his breach of his oral agreement with Wife to use cash wedding gifts for the downpayment on their future home purchase.[3] The court separately addressed Husband's handling of the cash wedding gifts by issuing sanctions against Husband.

We conclude Husband is entitled to reimbursement of the $28,000 downpayment.

We find no error in the family court's denial of Husband's request for reimbursement of the approximately $15,000 paid for closing costs and affirm that aspect of the judgment. Husband did not introduce any evidence at trial as to what the closing costs consisted of, and Husband cites no legal authority (and we have found none) holding that closing costs are reimbursable under section 2640. (See *In re Marriage of Weaver* (2005) 127 Cal.App.4th 858 [affirming reimbursement of downpayment, not closing costs].)

---

[3] The parties received $32,250 in cash (and a minimal amount of gift cards) as gifts at their wedding. Husband told Wife he was going to hold onto the money and use it for the downpayment on their home when they were ready to purchase, and Wife agreed to that plan.

12

2. Improvements to the Anaheim Property

At trial, the parties stipulated that Husband "made improvements to the Anaheim property after purchasing the property." There was also photographic and testimonial evidence at trial that significant improvements were made to the Anaheim property after its purchase, including to the kitchen and bath. Husband also produced a contract with a contractor for the improvement work. Wife did not dispute that Husband had paid for improvements using his separate property, but she opposed Husband's claim on the basis the improvements were only cosmetic and that under *In re Marriage of Reilley, supra,* 196 Cal.App.3d 1119, Husband was not entitled to full reimbursement of separate property contributions for improvements absent proof they caused the property to increase in value and the extent of the increase. (*Id*. at p. 1124.)

The family court expressed doubt that Husband had actually used the cash he withdrew from his bank account to pay the contractor for these improvements, and it concluded Husband's testimony to that effect was not supported by credible evidence. Whether the spouse claiming a separate property interest has adequately met their burden of tracing to a separate property source is a question of fact, and the trial court's holding on the matter must be upheld if supported by substantial evidence. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823; *In re Marriage of Higinbotham* (1988) 203 Cal.App.3d 322, 328.) Substantial evidence supports the court's conclusion that Husband failed to establish a right of reimbursement. Other than Husband's own testimony, there was no proof Husband paid for the improvement work from his separate property. Although there was evidence of multiple cash withdrawals by Husband from his separate bank account during the time period the Anaheim property was being remodeled,

13

Husband's testimony was the only evidence the money actually went to pay the contractor for the Anaheim property improvements. Husband's tracing expert relied on Husband's word that the money went to the contractor for the improvements, and on the expert's conversation with the contractor's bookkeeper regarding receipt of payment for improvements to the Anaheim property. The expert did not speak with the contractor himself, or review any of the contractor's business records that might reflect receipt of payments from Husband. And neither the contractor nor the bookkeeper testified at the trial. Second, the trial court noted inconsistencies in Husband's claim regarding the total amount he spent on the improvements. The court was entitled to reject the entirety of Husband's testimony. "[T]he trier of fact may disregard all of the testimony of a party, whether contradicted or uncontradicted, if it determines that he testified falsely as to some matters covered by his testimony." (*Halagan v. Ohanesian* (1967) 257 Cal.App.2d 14, 21; accord *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455.) The court did not err in rejecting Husband's claim of reimbursement for cash purportedly spent on home improvements.

C. *Wife's Claim for Half of Insurance Proceeds*

After Wife moved out of the Anaheim property, Husband made a claim on the parties' homeowners insurance policy, contending his personal property had been stolen. The police report indicates Husband claimed Wife took furniture, electronics, kitchen appliances, jewelry, liquor bottles, and toiletries belonging to him when she moved out. The policy was purchased with community funds and named both Husband and Wife as insureds. Husband received $71,565 in insurance proceeds for these items.

The checks issued by the insurance company were made out to both Husband and Wife, but Husband endorsed the checks (signing both his

14

name and, without her permission, Wife's name) and deposited them into his bank account. At trial, Husband contended the proceeds from the insurance policy constituted his separate property because they were to compensate him for property purchased using his separate property. Wife testified it was not true that all of the items Husband listed on the claim were his separate property.

The family court awarded half of the insurance proceeds to Wife, finding Husband's testimony that he had used his separate property to purchase the allegedly stolen items uncorroborated.

Husband contends the court erred because Wife acknowledged she took half of all community property when she moved out and left all of Husband's separate property. Therefore, he reasons, the insurance proceeds were solely to reimburse Husband for the loss of his separate property. We are not persuaded. This issue is purely factual, and the court explicitly rejected as not credible Husband's uncorroborated testimony that all the items purportedly stolen from the Anaheim property that formed the basis of his insurance claim were purchased by him with money that was his separate property. The court's findings are supported by substantial evidence.

D. *Husband's Claims for* Watts *Charges and* Epstein *Credits*

1. Wife's Occupancy of the Anaheim Property After Separation

Husband claims the court erred in its application of *In re Marriage of Watts, supra,* 171 Cal.App.3d 366, to Wife's exclusive use and occupancy of the Anaheim property from June 11, 2020 to February 15, 2021, after the trial court issued a DVRO against Husband.[4]

---

[4] In *In re Marriage of Watts*, the court held that "the trial court erred in concluding that it had no authority to reimburse the community for the value of [a party's] exclusive use of the family residence . . . between the

15

The trial court denied Husband's request on the grounds it would be inequitable to charge Wife for occupying the Anaheim property because the reason she had exclusive possession was that she had obtained a DVRO against Husband, and during this time, the mortgage on the Anaheim property was in forbearance and no payments were required. "The trial court has discretion, based on equitable considerations, as to whether to impose *Watts* charges and in what amount." (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 797.) We conclude the family court stated adequate reasons, supported by the evidence at trial, for refusing to impose a *Watts* charge.

2.  Husband's Claim for *Epstein* Credits

In *In re Marriage of Epstein, supra,* 24 Cal.3d 76, the California Supreme Court held "'a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically." (*Id.* at p. 84.) Improvements made to community property with separate property after separation also may be reimbursed, subject to the proviso that if the improvements do not correspondingly increase the fair market value of the community property, equitable principles may preclude dollar-for-dollar reimbursement. (*In re Marriage of Reilley, supra,* 196 Cal.App.3d at pp. 1123–1124.)

Husband had exclusive use and control of the Anaheim Property from February 15, 2021 to the time of the trial and sought reimbursement for

_____

date of separation and the date [on which the community itself no longer held an interest in the residence, which, in this case, was the date on which the marital home was sold]." (*Id.* at p. 374.)

16

utility bills he paid during that time, and half of the mortgage payments he made postseparation using his separate property. Husband also claimed he had to pay over $11,000 for repairs to the Anaheim property as a result of damage Wife allegedly caused when she moved out, including damage to walls, doors, cabinets, and closets. Wife testified she did not damage the Anaheim property and that she did not believe the invoice presented by Husband at trial was real. As to some of the items identified on the invoice as damage, Wife testified there was no such damage, other items were simple wear and tear, and the invoice listed work she knows has never been done.

The family court rejected as not credible Husband's claim that Wife caused more than $11,000 in damages to the Anaheim property, but it awarded Husband one-half of the $1,050 Husband spent to repair a plumbing issue.

As to Husband's claim for reimbursement of $31,461.50, which represented one-half of the mortgage payments he made postseparation with his separate property, the trial court denied his claim by offsetting the fair rental value of the Anaheim property during the 549 days Husband had exclusive use and possession of the property.[5] Husband's appellate briefing mentions the trial court's decision to deny his claim for reimbursement of postseparation mortgage payments, but does not challenge it or offer any legal argument and authority showing how it was erroneous. Therefore, we consider any challenge by Husband to this portion of the judgment waived. (*Hernandez v. First Student, Inc. supra,* 37 Cal.App.5th at p. 277 [a judgment is presumed correct; appellant bears the burden of overcoming that

---

[5] Based on a fair rental value of $3,400 a month, or $114 per day, testified to by Husband, the trial court concluded the offset would be $31,293.

17

presumption with cogent argument supported by legal analysis and citation to the record].)

Finally, the family court's decision to deny Husband's claim for the cost of repairing damages to the Anaheim property was based on its credibility findings, which we do not reweigh and which are supported by substantial evidence.

*E. Sanctions Under Section 271 and Attorney Fees*

Husband argues the $26,000 in attorney fees awarded to Wife was excessive and unwarranted. We disagree. "Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.'" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*Id.* at p. 1318.) "We review an award of attorney fees and costs under section 271 for abuse of discretion." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 29.)

At trial, Wife requested attorney fees and costs pursuant to sections 2030 and 6344. As noted above, Husband initially requested need-based attorney fees under section 2030, but later withdrew his claim. Both parties also requested sanctions pursuant to section 271 on the basis the other parties' actions during the dissolution proceeding unnecessarily increased their fees and costs.

18

The trial court awarded Wife $20,000 in attorney fees as a sanction against Husband, plus another $6,000 in attorney fees on the ground she was the prevailing party in the DVRO proceedings. The court explained in detail its reasons for awarding the sanctions and attorney fees, including its finding Husband had committed a fraud on the court and was not credible in multiple respects. In determining the amount of the fees awarded, the court had before it detailed evidence in the form of declarations supporting Wife's claims for attorney fees. Husband did not even attempt to show the court abused its discretion as to the amount awarded based on the evidence it had before it.

In challenging this aspect of the court's judgment, Husband effectively asks us to reevaluate and overturn the court's credibility findings, which we are not at liberty to do. Specifically, Husband points to alleged inconsistencies in Wife's testimony, arguing this "should temper and moderate the Court's reaction to the incongruities in [Husband's] trial positions."

Husband failed to show the award is excessive or that the trial court abused its discretion in awarding Wife sanctions and attorney fees.

III.

HUSBAND'S REQUEST FOR JUDICIAL NOTICE

Husband asks us to take judicial notice of his motion for reconsideration of the issuance of the DVRO, which he filed in the underlying proceedings on November 16, 2020. According to Husband, his motion included prior testimony by Wife that impeaches the testimony she gave later, at their dissolution trial, regarding what happened to the cash wedding gifts. Husband contends this information is relevant to (and undercuts) the

19

family court's award to Wife of attorney fees as the prevailing party in the DVRO proceedings.

The request for judicial notice is denied. Husband did not ask the family court to consider the contents of his motion for reconsideration (and the supporting evidence) in evaluating Wife's request for attorney fees she incurred in opposing the motion. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

DISPOSITION

The portion of the judgment denying Husband's claim for reimbursement of $28,000 for the downpayment on the Anaheim property is reversed, and the family court is instructed on remand to revise the judgment to reflect that Husband is entitled to be reimbursed in that amount prior to division of the proceeds from the sale of the Anaheim property. In all other respects, the judgment is affirmed. We also affirm the court's denial of Husband's motion for new trial. Husband's request for judicial notice is denied. Each party shall bear their own costs on appeal in the interests of justice.

GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


SCOTT, J.

20